## Richmond

### SERVICE STORAGE AND TRANSFER COMPANY, INC. v. COMMONWEALTH OF VIRGINIA.

March 10, 1958.

Record No. 4748.

Present, All the Justices.

The opinion states the case.

*Francis W. McInerny* (*Oscar L. Shewmake; John C. Goddin; Shewmake, Gary, Goddin & Blackwell; Macleay, Lynch & Macdonald*, on brief), for the appellant.

*Reno S. Harp, III, Assistant Attorney General* (*Kenneth C. Patty, Attorney General*, on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This is an appeal of right from an order of the State Corporation Commission wherein Service Storage and Transfer Company, Inc. (hereinafter called Service) was fined $500 for each of ten alleged violations of Chapter 12, Title 56, Code of Virginia, 1950, the aggregate of the fines being $5,000.

The case grows out of a prosecution of Service under § 56-304.12 of the Code for allegedly operating as a common carrier in intrastate commerce on the highways of Virginia without a certificate of convenience and necessity in violation of § 56-278.

Service is a common carrier by motor vehicle, operating under authority of Certificate No. MC-30471, issued by the Interstate Commerce Commission. The territory covered in the certificate follows:

"Between Bluefield, Va., Bluefield, W. Va. and points and places within five miles of Bluefield, W. Va.

"Between Bluefield, Va., and points and places within five miles of Bluefield, Va., and those within five miles of Bluefield, W. Va., respectively, on the one hand, and, on the other, points and places in that part of Virginia and West Virginia within 75 miles of that territory.

"Between Bluefield, W. Va., on the one hand, and, on the other, points and places in West Virginia, that part of Virginia west of U. S. Highway 29 and south of U. S. Highway 60 including points and places on the indicated portions of the highways specified, and that part of Virginia north of U. S. Highway 60 which is within 80 miles of Bluefield, W. Va."

The manifest object of the Interstate Commerce Commission's certificate was to permit Service to engage in interstate commerce. This is the extent of the commission's jurisdiction. Under the ICC certificate Service was empowered, (1) to gather freight within the defined territory and transport it out of Virginia into other jurisdictions; and (2) to gather freight within the defined territory, haul it out of the State and thence back to points within the defined territory, provided it acted in good faith and did not route the freight out of Virginia for the purpose of evading Virginia's jurisdiction. We are here concerned with the latter right.

It is contended by the Commonwealth that Service operates between points in Virginia by way of Bluefield, West Virginia; that the routes employed are not the usual or normal routes but are circuitous

routes used for the purpose of evading the Virginia law; that Service was fined on July 9, 1956 for similar violations from which no appeal was taken; that since the imposition of that fine Service has continued to violate the rule issued by the State Corporation Commission, resulting in the issuance of the present rule which is the basis for the fines involved on this appeal.

A fine of $500 was imposed upon Service for goods shipped by alleged circuitous routes in each of the following instances:

| Origin | Destination |
|---|---|
| Roanoke, Virginia | Glen Lyn, Virginia |
| Lynchburg, Virginia | Draper, Virginia |
| Roanoke, Virginia | Wytheville, Virginia |
| Bristol, Virginia | Carbo, Virginia |
| Bluefield, Virginia | Haysi, Virginia |
| Bristol, Virginia | Wise, Virginia |
| Roanoke, Virginia | Kimbleton [Kimballton], Va. |
| Bristol, Virginia | Cranes Nest, Virginia |
| Lynchburg, Virginia | Marion, Virginia |
| Roanoke, Virginia | Abingdon, Virginia |

It was stipulated that each shipment went through Bluefield, West Virginia.

The Commonwealth established by uncontradicted evidence that Service did not follow the usual or normal route between the points involved. It was urged that the goods in question had been shipped by Service over unnecessarily long and circuitous routes for the sole reason that it did not hold a certificate of convenience and necessity from the State Corporation Commission of Virginia.

The several charges against Service were developed by the Commonwealth as follows:

On August 21, 1956, an investigator of the Division of Motor Transportation of the State Corporation Commission stopped a truck owned by Service on Route 460, one mile north of Pearisburg, Virginia, on which was found a shipment from Rish Equipment Company, Roanoke, Virginia, to the Heron Todd Steel Construction Company, Inc., Glen Lyn, Virginia. This shipment had moved from Roanoke to Bluefield, West Virginia, and thence back to Glen Lyn, whereas the usual or normal route would have been direct from Roanoke to Glen Lyn, entirely within the State.

· On August 22, 1956, an investigator stopped a truck owned by Service on Route 460, one mile north of Pearisburg, Virginia, where he found a shipment from Norfolk and Western Industries, Inc., Lynchburg, Virginia, to Sutphin and Jackson, Draper, Virginia. This shipment had moved from Lynchburg to Bluefield, West Virginia, and thence back to Draper, when the usual or normal route would have been from Lynchburg to Draper, wholly within the State.

On September 6, 1956, an investigator stopped a truck owned by Service on Route 460, one mile north of Pearisburg, Virginia, wherein he found a shipment from Leonard Electronics, Roanoke, Virginia, to Wytheville Vance Company, Wytheville, Virginia. This shipment moved from Roanoke through Bluefield, West Virginia, and thence back to Wytheville. The usual or normal route for this shipment would have been from Roanoke to Wytheville, wholly within the State.

On September 11, 1956, an investigator stopped a truck owned by Service on Route 58 near St. Paul, Virginia, on which he found a shipment from Bristol Steel and Iron Works, Bristol, Virginia, to Link Belt Company, Carbo, Virginia. This shipment moved from Bristol to Bluefield, West Virginia, and thence back to Carbo, when the usual or normal route would have been from Bristol to Carbo, wholly within the State.

On September 11, 1956, a truck owned by Service was stopped by an investigator on Highway 58, near St. Paul, Virginia. The truck contained a shipment from F. D. Lazenby and Company, Bluefield, Virginia, to Haysi Hardware Company, Haysi, Virginia. This shipment went from Bluefield, Virginia to Bluefield, West Virginia, and thence back to Haysi, and did not take the usual or normal route which lies wholly within the State.

On September 13, 1956, another shipment was involved, from Bristol Steel and Iron Works, Bristol, Virginia, to Quesenberry Construction Company, Wise, Virginia. This shipment moved from Bristol to Bluefield, West Virginia, thence back to Wise, when the usual or normal route would have been from Bristol to Wise, wholly within the State.

· On September 17, 1956, an investigator stopped a truck owned by Service at the junction of U. S. Highways 58 and 72, at Coeburn, Virginia, on which he found a shipment of iron railway car wheels from Enterprise Wheel and Car Corporation, Bristol, Virginia, to Banner Fuel Corporation, Cranes Nest, Virginia. This shipment

moved from Bristol to Bluefield, West Virginia, thence back to Cranes Nest, when the usual or normal route would have been from Bristol to Cranes Nest, wholly within the State.

An examination of the maps of the State of Virginia, introduced as exhibits, showing the network of improved roads between the points here involved, conclusively shows that the routes used by Service in moving the various shipments were not the usual or normal routes. The commission was justified in finding, on this uncontradicted evidence, that Service had used these circuitous routes in an effort to bring the shipments within the purview of the authority granted under its certificate from the Interstate Commerce Commission.

██ Service assigns six errors, the first four of which can be embodied in the question: Is the State Corporation Commission vested with the authority to regulate intrastate commerce in these instances and, if so, did it act within the grant of that authority in assessing the fines upon Service? Service thus contends that the action of the State Corporation Commission is beyond its jurisdiction. Section 56-278, Code of Virginia, 1950, reads:

"§ 56-278. REQUIRED CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY.—No common carrier by motor vehicle or restricted common carrier by motor vehicle not herein exempted shall engage in intrastate operation on any highway within the State without first having obtained from the Commission a certificate of public convenience and necessity authorizing such operation, and a statement of the State Highway Commission that the law applicable to the proposed route or routes has been compiled with as to size, weight, and type of vehicles to be used, and a like statement as to any increase in size, weight, and type of vehicles proposed to be operated by the applicant after such application is granted."

It is clear from the above section that the State Corporation Commission is vested with authority to issue certificates of public convenience and necessity in proper instances where a common carrier by motor vehicle applies for same. The obvious purpose of the section is to give the Commission control over intrastate traffic on the highways of the Commonwealth. It is conceded that Service did not hold such a certificate.

The governmental regulation and supervision by a State of its internal commerce may lawfully be exerted through validly constituted administrative commissions or boards. *Pa. R. R. Co. v. Towers*, 245 U. S. 6, 62 L. ed. 117, 38 S. Ct. 2, L.R.A. 1918C 475.

A commission, if authorized by the law of the State, may make orders and regulations concerning intrastate commerce which do not conflict with the enactments of Congress, and its discretion in this respect may be exercised upon a view of all existing relevant facts and circumstances. *Ill. C.R.R. Co.* v. *De Fuentes*, 236 U. S. 157, 59 L. ed. 517, 35 S. Ct. 275.

It will be observed that the commerce here involved moved from points in Virginia through Bluefield, West Virginia, and then back to points in Virginia. Service argues in its brief that such movements constitute interstate commerce as defined by its ICC certificate. It says:

"The carrier (Service) also accepts for transportation shipments moving from one Virginia point within the described territory to a second Virginia point within the described territory. This is done by using the two separate grants set forth above in combination (meaning paragraphs 1 and 2 in its ICC certificate heretofore quoted). It is as though two independent carriers were interchanging freight, one with the other, at Bluefield, West Virginia. To exemplify, upon receiving a request to transport a shipment from Lynchburg, Virginia, to Draper, Virginia, the carrier would pick up the shipment at Lynchburg under the authority contained in the first paragraph set forth above, and transport it to its terminal at Bluefield, West Virginia. Upon arrival at that point, the shipment would be transported to the Virginia destination under the authority contained in the second paragraph set forth above."

Such a movement as suggested would be a mere subterfuge, and an attempt to divest the State Corporation Commission of its jurisdiction over intrastate commerce. 15 C. J. S., Commerce, § 24, pp. 289, 290, Footnote 18. Why ship goods from Lynchburg, Virginia, to Draper, Virginia, through Bluefield, West Virginia, when the obvious usual or normal route would be direct from Lynchburg to Draper, wholly within the State?

"Whether any transaction constitutes interstate or intrastate commerce depends on the essential character of what is done and the substantial surrounding circumstances." 15 C. J. S., Commerce, § 18, p. 278.

Of course, there are many instances in which shipments between points in the same State can properly be identified as interstate commerce, where the shipments follow the usual or normal routes between the points involved. That is not the case here. An examina-

tion of the evidence which includes the map exhibits of Virginia and West Virginia clearly shows that the "normal or usual" routes were not followed between the Virginia points involved. On the contrary, the shipments were hauled miles out of the way, over circuitous routes, in order to accomplish the purpose sought.

The reasoning employed in *Eichholz* v. *Public Service Commission*, 306 U. S. 268, 83 L. ed. 641, 646, 59 S. Ct. 532, is applicable here. There it is said:

"Appellant insists that the hauling from St. Louis over the state line to Kansas City, Kansas, of merchandise consigned to persons in Kansas City, Missouri, and hauling it back again to its intended destination in Kansas City, Missouri, was actually interstate transportation. * * * That fact, however, does not require the conclusion that the State's action for the protection of its intrastate commerce was invalid. See Lone Star Gas Co. v. Texas, 304 U. S. 224, 238, 82 L. ed. 1304, 1314, 58 S. Ct. 883. We may assume that Congress could regulate interstate transportation of the sort here in question, whatever the motive of those engaging in it. But in the absence of the exercise of federal authority, and in the light of local exigencies, the State is free to act in order to protect its legitimate interests even though interstate commerce is directly affected. * * * If appellant's hauling of the merchandise in question across the State line was not in good faith but was a mere subterfuge to evade the State's requirement as to intrastate commerce, there is no ground for saying that the prohibition of the use of the interstate permit to cover such transactions, and the application of the Commission's rule prohibiting them in the absence of an intrastate certificate, was an unwarrantable intrusion into the federal field or the subjection of interstate commerce to any unlawful restraint. * * *."

The reasoning employed in *Eastern Carrier Corp.* v. *U. S.*, 31 F. Supp. 232, 236, is also applicable:

"* * * Thus it may not be concluded that because a carrier transports merchandise across a state line in order to evade the orders of a state public service commission, it has thereby engaged in bona fide interstate commerce serving public convenience and necessity. Upon the contrary, the purpose which the carrier has served by such operation is a purely private purpose, the evasion of the laws of a state.

"The definition sought to be applied by the plaintiff for the phrase 'bona fide operation' is one which cannot be supported with any show of reason. This clearly appears from the authority which the

plaintiff itself cites in Slagle Contract Carrier Application, 2 M. C. C. 127, 141, wherein the Commission said: "* * * The Latin words "bona fide" mean "in good faith." Webster's New International Dictionary defines "bona fide" as "in or with good faith; without fraud or deceit; real or really; actual or actually; genuine or genuinely." As defined in Black's Law Dictionary, the words mean "in or with good faith; honestly, openly, and sincerely; without deceit or fraud".' "

Under our dual system of government, the inherent sovereign power to regulate intrastate transportation by common carriers is reserved to the State, and within the limitation of the State Constitution the authority of the legislature is supreme in the regulation of intrastate transportation by common carriers unless such regulation in effect deprives a person of property without due process of law or materially burdens interstate commerce in violation of the Constitution of the United States. On the other hand, the power to regulate interstate and foreign commerce is, by provisions of the Federal Constitution, vested in Congress, and has been exercised by the enactment of the Interstate Commerce Act. 9 Am. Jur., Carriers, § 44, p. 453, and cases cited under Footnote 17.

The question for decision is whether the instant shipments involved intrastate or interstate commerce. Our conclusion is that under the facts and circumstances established they involve intrastate commerce and are thus amenable to the jurisdiction of State authority.

██ Service's next assignment of error challenges the right of the State Corporation Commission to assess fines against it in the absence of a rule to show cause alleging specific violations. This assignment is directed to three alleged shipments, originating at Roanoke, Lynchburg and Roanoke, Virginia; their respective destinations being Kimballton, Marion, and Abingdon, Virginia.

The Attorney General concedes the lack of proper allegations and proof to justify the fines imposed in these three instances. This will require an amendment to the Commission's order, resulting in a reduction in the combined fines against Service from $5,000 to $3,500.

The final assignment of error reads: "The Commission erred in holding that its decision in a prior case is res adjudicata as to the issues involved in this proceeding."

In view of our disposition of the case on its merits it is not necessary to consider this assignment.

For the reasons stated the order of the State Corporation Com-

mission is affirmed in part, reversed in part and remanded, with directions that the order be amended in accordance with the views here expressed.

*Affirmed in part;*
*reversed in part,*
*and remanded.*