## Richmond

AGRICULTURAL SERVICES ASSOCIATION, INC. v. COMMONWEALTH OF
VIRGINIA, EX REL., ETC.

January 19, 1970.

Record Nos. 7119 and 7120.

Present, Snead, C. J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*William J. Augello, Jr.* (N.Y.) (*Francis A. Silver*, on brief), for
appellant in Record Nos. 7119 and 7120.

*H. K. Reveley, Jr., Assistant Commerce Counsel, State Corporation
Commission; D. Gardiner Tyler, Assistant Attorney General (Robert
Y. Button, Attorney General,* on brief), for appellee in Record No.
7119 and 7120.

COCHRAN, J., delivered the opinion of the court.

This is an appeal of right from two orders of the State Corporation
Commission (Commission) entered June 24, 1968 against Agricul-
tural Services Association, Inc. (ASA), of Bells, Tennessee, imposing
penalties of $150.00 each for violations of Virginia laws governing
registration of motor carriers.

Two rules were issued by the Commission alleging that ASA was
required by the Interstate Commerce Act to have appropriate Inter-
state Commerce Commission (ICC) authority to operate as a motor
vehicle carrier in interstate commerce and that it was in violation of

Virginia law, Code § 56-304.12, since it had certified to the Commission that such authority was not required. The alleged violations occurred in Wythe County November 15 and 16, 1967 and in Rockingham County November 29, 1967.

Since ASA was operating vehicles in interstate commerce in Virginia it was not required to have Virginia license tags. However, it was required by § 56-304.1 of the Code to obtain from the Commission and display a registration card or stamp and identification marker for each vehicle. Under § 56-304.6:1 of the Code such card, stamp or marker will not be issued until the applicant has certified to the Commission that no authority is required by the ICC. ASA filed applications for registration in Virginia in 1966 and 1967 on forms furnished by the Commission in which it certified to its status by checking boxes marked "For Hire Carrier", "Contract", "Exempt", "Interstate". The forms did not require or provide for the applicant to specify the type of ICC exemption which was claimed.

ASA also certified to the ICC that it was engaged in interstate commerce as an agricultural cooperative under § 203(b)(5) of the Interstate Commerce Act Part II (49 U.S.C.A. § 303(b)(5)) and was therefore exempt from ICC regulation.

On November 15 and 16, 1967, an investigator for the Commission stopped two southbound trucks of ASA in Wythe County and found in them shipments of fabrics consigned by shippers in Pennsylvania, Connecticut and Rhode Island to consignees in Tennessee. In Rockingham County on November 29, 1967, another Commission investigator inspected a northbound ASA truck which contained three shipments of frozen vegetables consigned by a corporate member of the cooperative, in Bells, Tennessee, to New York and New Jersey consignees.

The commodities hauled in the three vehicles were nonexempt within the meaning of Interstate Commerce Act Part II, § 203(b)(6) (49 U.S.C.A. § 303(b)(6)), which exempts agricultural products and specifies commodities which are nonexempt. At the consolidated hearing in the two proceedings before the Commission ASA contended that its exemption was claimed not under § 203(b)(6) but under § 203(b)(5) of the Interstate Commerce Act Part II (49 U.S.C.A. § 303(b)(5)) which in 1967 exempted:

"(5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved

June 15, 1929, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined; . . ."

ASA further contended that it hauled the frozen vegetables north for one of its members, as it was permitted to do as an agricultural cooperative, and hauled the fabrics south for nonmembers, as it was also permitted to do if the transportation was necessary and incidental to its member business, provided its nonmember business did not exceed its member business. *Northwest Agricultural Cooperative Association, Inc.* v. *I.C.C.*, 350 F. 2d 252 (9th Cir. 1965), cert. denied 382 U. S. 1011, 86 S. Ct. 620 (1966).

Only one witness, its Executive Vice-President, testified for ASA. He described in detail its complex structure, comprising nine corporate members, numerous divisions and thousands of small farmers organized, through cooperatives, to provide a complete "farm-to-the-table food system". Of total ASA gross revenues for 1967 of seven million dollars only three per centum was derived from transportation for nonmembers.

The Commission found that ASA was not entitled to the agricultural cooperative exemption of Interstate Commerce Act § 203(b)(5) and was therefore in violation of Virginia law. This conclusion was reached on the theory that a *prima facie* case was made against ASA when it was shown to be transporting nonexempt commodities under § 203(b)(6), and that ASA failed to go forward with sufficient evidence to prove exemption under § 203(b)(5).

We must decide whether the Commission had authority to determine ASA's claim to exemption under § 203(b)(5) of the Interstate Commerce Act. If the Commission exceeded its authority in making this determination we need not consider its ruling on the evidence.

ASA is a Tennessee corporation. Its transportation activities which have been questioned are entirely in interstate commerce. On the face of it interpretation of the status of ASA under the Interstate Commerce Act would seem to be a matter for primary determination by the ICC. Interstate Commerce Act Part II, § 202, 49 U.S.C.A. § 302.

The principle that interpretation of ICC certificates of motor carriers should first be made by the ICC and not by our Commission has been established by *Service Storage & Transfer Co.* v. *Commonwealth*

*of Va.*, 359 U. S. 171, 79 S. Ct. 714, 3 L. ed. 2d 717 (1959). There, a motor carrier operating under certificates issued by the ICC was fined by the Commission for using the interstate rights as a "subterfuge" for hauling various intrastate shipments. This court affirmed the criminal penalties imposed for all but three of the alleged violations, asserting jurisdiction because the facts showed that the shipments in controversy involved intrastate commerce. *Service Storage & Transfer Co.* v. *Commonwealth of Va.*, 199 Va. 797, 102 S. E. 2d 339 (1958). The United States Supreme Court, in reversing, held that interpretation of the carrier's interstate commerce certificate should first be made by the ICC so that "the possibility of a multitude of interpretations of the same federal certificate by several States will be avoided and a uniform administration of the Act achieved." 359 U. S. 171, at 179, 79 S. Ct. 714, at 719, 3 L. ed. 2d 717, at 722. It was pointed out in the opinion that to uphold the fines imposed by the Commission would be tantamount to a partial suspension of the carrier's federally granted interstate operating certificate. In refusing to permit this the court suggested that the Commonwealth was not powerless to act as it could file a complaint with the ICC under § 204(c) of the Act that the carrier had abused its certificate.

The cases have established a pattern in determining the primary jurdisdiction of the ICC before relief may be afforded by the courts. Preliminary resort to the ICC is required where the inquiry is essentially one of fact and of discretion in technical matters and when uniformity can only be secured if determination is made by the ICC. *Great Northern Ry. Co.* v. *Merchants' Elevator Co.*, 259 U. S. 285, 291, 42 S. Ct. 477, 479, 66 L. ed. 943, 946 (1922); *Hewitt* v. *New York, N. H. & H. R. Co.*, 284 N. Y. 117, 29 N. E. 2d 641 (1940). See also *Penna. R. R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121, 131, 35 S. Ct. 484, 487-488, 59 L. ed. 869, 873 (1915).

It seems to be conceded by the Commission that prior to 1967 there was little doubt that a state regulatory body or court could not interpret and apply the exemption here claimed. This is a matter involving complex technical questions and problems of uniformity clearly calling into play the "primary jurisdiction" doctrine. *Agricultural Transportation Association of Texas* v. *King*, 349 F. 2d 873 (5th Cir. 1965) (holding that the District Court should not decide whether ATA was qualified for § 203(b) (5) exemption since this determination was primarily for the ICC). Nor can it be questioned that the doctrine applies to the states. *Service Storage & Transfer Co.* v. *Commonwealth,*

*supra;* see also *Great Northern Ry. Co.* v. *Merchants' Elevator Co., supra;* 3 Davis, *Administrative Law Treatise* (1958) § 19.08.

The Commission contends, however, that by a 1967 agreement it has been empowered to interpret and enforce the Interstate Commerce Act in Virginia. By virtue of this agreement the Commission concluded that it was free to determine ASA's claim to exemption under § 205 (b) (5) of the Act. We do not agree.

True, the Act was amended in 1965 by Public Law 89-170 to promote greater cooperation between the ICC and state authorities and the ICC was "authorized to make cooperative agreements with the various States to enforce the economic and safety laws and regulations of the various States and the United States concerning highway transportation." 49 U.S.C.A. § 305 (f) (1968 Pam.).

The Commonwealth of Virginia entered into such a cooperative agreement in March, 1967.[1] The Commission contends that each

---

[1] Pursuant to Regulations promulgated by the Interstate Commerce Commission. Title 49, Chapter X, C.F.R. provides:

§ 1022—Cooperative Agreements with States.

§ 1022.1 Eligibility.

Any State may agree with the Interstate Commerce Commission to enforce the economic laws and regulations of said State and the United States concerning highway transportation by filing with the Secretary of said Commission at Washington, D. C. 20423, a written acceptance of the terms herein.

§ 1022.2 Extent of acceptance.

The written acceptance may be in letter form, signed by competent authority of said State and shall specify the terms herein pertaining to the obligation of a State in which said State will participate. To the extent that a State agrees to participate in the terms herein, officials of the Interstate Commerce Commission will reciprocate.

§ 1022.3 Cancellation.

Cancellation or withdrawal, in whole or in part, from any agreement made under this chapter may be effected by written notice from either party indicating the effective date of said cancellation or withdrawal.

§ 1022.4 Exchange of information.

(a) *Interstate Commerce Commission furnishing information to State.* Information that comes to the attention of an employee of the Interstate Commerce Commission in the course of his official duties of examination, inspection, or investigation of the property, equipment, and records of a motor carrier or other, pursuant to section 220 (d) of the Interstate Commerce Act, and that is believed to be a violation of any law or regulation of the State pertaining to unauthorized, unsafe, or otherwise illegal motor carrier operations, shall be communicated to the appropriate State authority by an official of the Interstate Commerce Commission.

(b) *State furnishing information to Interstate Commerce Commission.* Information that comes to the attention of a duly authorized agent of the State in the course of his official duties of examination, inspection or investigation of the property, equipment, and records of a motor carrier or others, and that is believed to be a

state which has accepted the terms of such an agreement is thereby authorized to make its own independent interpretation of the Interstate Commerce Act and to enforce the Act within its borders. But no such legislative intent is found in the enabling legislation, or in the legislative history of Public Law 89-170 (1965), U. S. Code Cong. & Adm. News, vol. 2, pp. 2923-2930 (1965), or in the cooperative agreement itself. Rather, evidence to the contrary is found in the amendment to § 202 of the Act, also embraced in Public Law 89-170, relating to uniform standards of registration of motor carriers in the states, which concludes with this language:

violation of any provision of the economic laws of the United States concerning highway transportation or the regulations of the Interstate Commerce Commission prescribed thereunder, shall be communicated to the Regional Director or the Associate Regional Director of the Interstate Commerce Commission's Bureau of Operations for that State.

§ 1022.5 Request for assistance.

(a) *State request for Interstate Commerce Commission assistance.* Upon written request of the appropriate State authority, the Bureau of Operations Regional Director or Associate Regional Director of the Interstate Commerce Commission for that State shall, as time, personnel, and funds permit, obtain evidence for use by said State in the enforcement of its laws and regulations concerning unauthorized or otherwise illegal motor carrier operations. Evidence obtained in this manner shall be transmitted to the appropriate State authority together with the name and address of an agent or employee, if any, having knowledge of the facts, who shall be made available when necessary to testify as a witness in an enforcement proceeding or other action.

(b) *Interstate Commerce Commission request for State assistance.* Upon written request from a Regional Director or Associate Regional Director of the Interstate Commerce Commission's Bureau of Operations, the appropriate State authority shall, as time, personnel, and funds permit, obtain evidence in the State for use by the Interstate Commerce Commission in its enforcement of the economic laws and regulations of the United States concerning highway transportation. Evidence obtained in this manner shall be transmitted to the Regional Director or Associate Regional Director of the Interstate Commerce Commission's Bureau of Operations, together with the name and address of an agent or employee, if any, having knowledge of the facts, who shall be made available when necessary to testify as a witness in an enforcement proceeding or other action.

§ 1022.6 Joint examination, investigation, or inspections.

Upon agreement by the Regional Director or Associate Regional Director of the Interstate Commerce Commission's Bureau of Operations and the appropriate State authority, there will be conducted a joint examination, inspection, or investigation of the property, equipment, or records of motor carriers or others, for the enforcement of the economic laws and regulations of the United States and the State concerning highway transportation. The said Regional Director or Associate Regional Director of the Interstate Commerce Commission and the appropriate State authority shall decide as to the location and time, the objectives sought, and the identity of the person who will supervise the joint effort and make the neces-

"Nothing in this paragraph shall be construed to deprive the [Interstate Commerce] Commission, when there is a reasonable question of interpretation or construction, of its jurisdiction to interpret or construe certificates of public convenience and necessity, permits, or rules and regulations issued by the Commission, nor to authorize promulgation of standards in conflict with any rule or regulation of the Commission." Public Law 89-170, § 2, 79 Stat. 648, 49 U.S.C.A. § 302 (b) (2) (1968 Pam.).

A motor carrier's right to exemption from regulation under § 203 (b) (5) of the Act, no less than its right to operate under a certificate of authority from the ICC, is peculiarly a matter for determination by the ICC and not by a regulatory body in each state through which its interstate operations extend. Centralization of authority is not only justified but required to avoid a patchwork of conflicting interpretations and endless litigation.

By 1968 amendment § 203 (b) (5) of the Act, under which ASA claims exemption as an agricultural cooperative, has been strengthened to limit exempt transportation for nonmembers of a cooperative to that "which is incidental to its primary transportation operation and necessary for its effective performance and shall in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage". 49 U.S.C.A. § 303 (b)

---

sary decisions. Any agent or employee of either agency who has personal knowledge of pertinent facts shall be made available when necessary to testify as a witness in an enforcement proceeding or other action.

§ 1022.7 **Joint administrative activities related to enforcement of economic laws and regulations.**

To facilitate the interchange of information and evidence, and the conduct of joint investigation and administrative action, the Regional Director or Associate Regional Director of the Interstate Commerce Commission's Bureau of Operations and the appropriate State authority shall, when warranted, schedule joint conferences of staff members of both agencies. Information shall be exchanged as to the nature and extent of the authority and capabilities of the respective agencies to enforce the economic laws of the State or of the United States concerning highway transportation. The Interstate Commerce Commission and the State (or appropriate State authority) shall use their best efforts to inform each other of changes in their rules and regulations.

§ 1022.8 **Supplemental agreements.**

The terms hereinabove specified may be supplemented from time to time by specific agreement between the Interstate Commerce Commission and the appropriate State authority in order to further implement the provisions of section 305 (f). 49 C.F.R. § 1022.

(5) (1968 Pam.). Notice to the ICC is also now required before transportation for nonmembers is commenced.

It was brought out in oral argument that ASA has filed its notice of intent to transport for nonmembers and that an ICC investigation is pending. While this does not render moot the present controversy it may result in a determination by the ICC of ASA's present status under the Interstate Commerce Act.

The 1967 cooperative agreement is addressed to the reciprocal exchange of information between the ICC and state regulatory bodies. Before this enabling legislation was enacted into law information concerning violations of state laws and regulations coming to the attention of the ICC through official examinations or inspections could not be communicated to the states because of the prohibitions of § 222(d) of the Act (49 U.S.C.A. § 322(d)). Now such information may be communicated so that the states may be assisted in gathering evidence for use in enforcing their laws. Furthermore, provision is made for joint examination, inspection or investigation by the ICC and the state regulatory body "for the enforcement of the economic laws and regulations of the United States and the State concerning highway transportation." Footnote 1, *supra*, § 1022.6.

We conclude that the Commission had no authority under the cooperative agreement to determine ASA's status under § 203(b)(5) of the Interstate Commerce Act (49 U.S.C.A. 303(b)(5)) and that it should have referred this inquiry to the ICC. This it could have done by filing a complaint under § 204(c) of the Act, by reporting the information concerning shipments of nonexempt commodities, or by requesting a joint investigation under the cooperative agreement. The judgments and orders are accordingly vacated and the proceedings herein remanded to the State Corporation Commission for such action as may be deemed proper not inconsistent with this opinion.

*Reversed and remanded.*