## STATE, BY ITS POLLUTION CONTROL AGENCY AND ITS ATTORNEY GENERAL, v. UNITED STATES STEEL CORPORATION.

240 N. W. 2d 316.

March 12, 1976—No. 45921.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, and *Eldon G. Kaul* and *Alan R. Mitchell*, Special Assistant Attorneys General, for appellant.

*Benjamin J. Blacik, Rooks, Pitts, Fullagar & Poust, Jay A. Lipe, William M. Stevens*, and *John A. Hammerschmidt*, for respondent.

YETKA, JUSTICE.

This is an appeal from the St. Louis County District Court involving an action by the state of Minnesota, appellant, against United States Steel Corporation (U. S. Steel), respondent, for violations of certain air and water pollution laws in the operation of its coke plant in Duluth. Upon the motion of U. S. Steel, the trial court dismissed the action. Appellant moved the court to amend its order to deny U. S. Steel's motion to dismiss and grant its cross-motion for summary judgment. Before decision on the motion, appellants appealed the first order. Subsequently, the trial court entered its order denying appellant's motion to amend.

The violations alleged in the 11-count complaint fall into two groups: (1) Operating without statutorily required pollution control permits,[1] and (2) waste disposal (into the St. Louis River) and air emissions in excess of permissible limits set by regulations of the Minnesota Pollution Control Agency (PCA).[2]

The complaint seeks the following relief: (1) Abatement of the air and water pollution to comply with state law, (2) notice to the district court of the manner in which U. S. Steel will comply (installation of pollution control equipment or cessation of operation), (3) posting of a $5,000,000 performance bond to be forfeited at the rate of $10,000 per day for each day U. S. Steel fails to comply with the abatement order, and (4) statutorily provided civil penalties and attorneys fees.

The trial court dismissed the action for two reasons. First, he ruled that the PCA should first have pursued internal administrative procedures providing for the issuance of an order directing U. S. Steel to discontinue or abate its alleged pollution, and, in the event it was not complied with, then sought judicial enforcement. Second, the court concluded that judicial action must be deferred until pending administrative action involving the same subject matter was completed.

The important issues raised on appeal are (1) must the PCA, in the enforcement of statutory and regulatory pollution laws,

---

[1] Minn. St. 115.07, subd. 1, provides that "[i]t shall be unlawful * * * to * * * operate a [waste] disposal system, or any part thereof, until plans therefor shall have been submitted to the [Pollution Control Agency] * * * and a written permit therefor shall have been granted by the agency." Minn. St. 116.081, subd. 1, provides that "[i]t shall be unlawful * * * to * * * operate [a facility which discharges or releases into the outdoor atmosphere any air contaminant] * * * until plans therefor shall have been submitted to the [PCA], and a written permit therefor shall have been granted by the agency."

[2] The water quality and effluent standards alleged to have been violated are set forth in Minn. Reg. WPC 15(c)(3), 15(c)(6), and 15(d)(2) Class C. The air emission standards allegedly violated are found in Minn. Reg. APC 6, 11.

resort first to internal administrative procedures to secure compliance by the alleged polluter, and (2) did the trial court properly defer judicial action on alleged pollution violations to the PCA and United States Environmental Protection Agency (EPA) until pending administrative proceedings involving the same subject matter were concluded.

■ However, U. S. Steel first contests our jurisdiction to hear the appeal. Its argument is that appellant's motion to amend the order of dismissal operated to revoke the appealability of that order by suspending its conclusiveness. It is further urged by U. S. Steel that only the second order of the trial court, denying appellant's motion to amend, is appealable.

The object of the motion to amend was to obtain a vacating of the order of dismissal. It was denied. No matter what the status of the first order with regard to appealability, it is abundantly clear from our decisions that the second order, in effect denying appellant's motion to vacate the earlier order, is not appealable.[3] It is also apparent from those same decisions that the appealability of the order sought to be vacated is not altered in any respect by the motion to vacate or subsequent denial thereof.

U. S. Steel further urges that even if the first order is appealable, the second order, not having been appealed, cannot be considered by us. That contention is wholly without merit. The second order merely affirmed the first, supplemented with a somewhat more extensive memorandum explaining the trial court's earlier ruling.

---

[3] See, Kloos v. Soo Line R. 282 Minn. 168, 163 N. W. 2d 567 (1968); LeRoy v. Figure Skating Club of Minneapolis, 281 Minn. 576, 162 N. W. 2d 248 (1968); Tryggeseth v. Norcross, 262 Minn. 440, 115 N. W. 2d 56 (1962); Bennett v. Johnson, 230 Minn. 404, 42 N. W. 2d 44 (1950) (holding nonappealable an order denying a motion to vacate an appealable order); Cohen v. Globe Business Sales, Inc. 282 Minn. 540, 166 N. W. 2d 704 (1969); Smith v. Illinois Cent. R. Co. 244 Minn. 52, 68 N. W. 2d 638 (1955) (holding nonappealable an order refusing to vacate a nonappealable order).

Though U. S. Steel's objections are thus answered, we nevertheless believe that there is a substantial question as to the appealability of an order of dismissal of this nature deferring judicial action to administrative proceedings. Whatever the answer to that question, we believe that this is a proper case for discretionary review.

■ Appellant relies on Minn. St. 115.071, subd. 1, for its authority to pursue judicial remedies for the alleged violations of state pollution control statutes and regulations. That section provides:

"The provisions of chapters 115 and 116 and all regulations, standards, orders, stipulation agreements, schedules of compliance, and permits adopted or issued by the agency thereunder or under any other law now in force or hereafter enacted for the prevention, control, or abatement of pollution may be enforced by any one or any combination of the following: criminal prosecution; action to recover civil penalties; injunction; action to compel performance; or other appropriate action, in accordance with the provisions of said chapters and this section."

The balance of § 115.071 defines the nature and extent of the remedies provided in subd. 1.

The trial court ruled that the statutory enforcement scheme required, as a predicate to judicial action, an order of the PCA directing an alleged polluter to discontinue or abate its violative operations.[4] We are of a different view.

---

[4] The court relied on Minn. St. 115.071, subd. 5, defining actions to compel performance: "In any action to compel performance of an order of the agency for any purposes relating to the prevention, control or abatement of pollution under chapters 115 and 116, the court may require any defendant adjudged responsible to do and perform any and all acts and things within his power which are reasonably necessary to accomplish the purposes of the order. * * *"

The authority for such an order is found in Minn. St. 115.03, subd.

In our judgment § 115.071 unambiguously accords the state discretion in selecting the means of enforcement it deems most suitable in a given case. We are unable to perceive even the suggestion that initial administrative action is legislatively preferred, much less mandated. Rather, we are convinced that the legislature recognized that the effective and expeditious control of a serious environmental problem requires that those entrusted with the enforcement of our pollution control laws be provided a broad range of remedies from which they are free to select those they deem most appropriate. And that is precisely what was done in the instant case. Rather than follow the circuitous administrative procedure, the state, through its attorney general and PCA, pursued the more expeditious means of enforcement—civil penalties and injunctive relief.

U. S. Steel, in support of the trial court's ruling, urges that the administrative law doctrines of primary jurisdiction and exhaustion of remedies compel us to affirm the dismissal. As to the latter doctrine, we believe it is clearly inapplicable. In State ex rel. Sholes v. University of Minnesota, 236 Minn. 452, 54 N. W. 2d 122 (1952), we observed that exhaustion of remedies is designed to govern the timing of judicial relief from administrative action. The instant case does not involve any administrative action. Rather, appellant sought relief for statutory and

---

1(e), which provides in pertinent part: "The [PCA] is hereby given and charged with the following powers and duties:

\* \* \* \* \*

"(e) To \* \* \* issue \* \* \* or enforce reasonable orders \* \* \* under such conditions as it may prescribe, in order to prevent, control or abate water pollution \* \* \*." Under this procedure, an alleged polluter would be afforded an evidentiary hearing before the PCA, § 115.05, subd. 1, and review in the district court to determine whether the PCA order was lawful and reasonable, and factual findings were warranted by the evidence, § 115.05, subds. 3 and 7. If the order is upheld on review, and the alleged polluter fails to comply with it, then judicial enforcement may be sought pursuant to § 115.071, subd. 5.

regulatory violations, relief which only the district court was authorized to give, Minn. St. 115.071.

The judicially created doctrine of primary jurisdiction is concerned with the orderly and sensible coordination of the work of agencies and courts. It requires that—

"* * * in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created * * * for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." Far East Conference v. United States, 342 U. S. 570, 574, 72 S. Ct. 492, 494, 96 L. ed. 576, 582 (1952).

See, generally, 3 Davis, Administrative Law, § 19.01.

Appellant argues persuasively that where the administrative agency entrusted with the regulation of a particular subject matter is involved in the judicial proceeding, as here, the concerns underlying the doctrine of primary jurisdiction are obviated. We agree.

Civil Aeronautics Board v. Aeromatic Travel Corp. 489 F. 2d 251 (2 Cir. 1974), cited by appellant, presented an analogous set of circumstances in which the doctrine was rejected. The Civil Aeronautics Board sought injunctive relief against defendants for certain violations of the Federal Aviation Act of 1958. The court observed that the board had been given the authority to enforce the act in one of two ways, direct judicial enforcement

or administrative order to compel compliance, enforceable by judicial action, and stated:

"First, a reading of the Act indicates that Congress intended that the CAB be able to enforce the Act and regulations without an initial determination by the Board that they had been violated. * * * Congress provided in 49 U. S. C. § 1487(a) for the enforcement of the Act, and of any Board rule, regulation, or order, by the Board's suing in district court. Appellees' arguments would in effect amend this section to provide that only the Board's orders can be enforced in district court. The fact that the Board has decided in allegedly similar cases first to seek cease and desist orders after hearings before the Board need not concern us; the CAB, in its discretion, may choose whatever enforcement procedure it believes appropriate. One of the obvious purposes of providing that the CAB may bring suit in district court is to ensure a speedy enforcement of the Act * * *.

"Second, when the agency chooses to go to the district court for enforcement, it makes little sense to refer the very question at issue to the agency. Reference to the CAB of a major issue in a suit in which the Board is plaintiff would be, as we said in *Modern Air Transport*, a 'delaying formalism.' 179 F. 2d [622] at 625. Professor Davis has written that the principal reason behind the doctrine of primary jurisdiction is the 'recognition of the need for orderly and sensible coordination of the work of agencies and of courts.' 3 K. Davis, Administrative Law Treatise § 19.01, at 5 (1958). Therefore, the doctrine does not apply when the agency itself is plaintiff. Id. § 19.02, at 13-14." 489 F. 2d 254.

See, also, Interstate Commerce Comm. v. All-American, Inc. 505 F. 2d 1360 (7 Cir. 1974) (recognizing inapplicability of primary jurisdiction when administrative agency is involved and distinguishing rule-making function from rule-enforcement function).

■ The question remains whether judicial actions should be

deferred pending resolution of (1) U. S. Steel's National Pollutant Discharge Elimination System (NPDES) permit application, and (2) administrative action contemplated by the United States Environmental Protection Agency (EPA) regarding violations of Minnesota air pollution regulations. The trial court ruled that it should defer further action.

The NPDES permit application is pending before the PCA, which, under congressional authority, 33 USCA, § 1342(b), has been delegated as the administrator of the permit program. The regulations relating to its administration are found in Minn. Reg. WPC 36. As a condition of the permit, the applicant must comply with certain effluent standards and limitations provided in the Federal Water Pollution Control Act and any other more stringent standards or limitations required by state law. The EPA administrative action to date involves a notice of violation sent to U. S. Steel alleging that it was in violation of Minn. Reg. APC 5, 6, and 11, under authority of 42 USCA, § 1857c-8(a)(1) providing that the EPA shall notify a person in violation of applicable state air pollution laws. If the violations continue, the EPA, in its discretion, is authorized to issue a compliance order or seek appropriate civil relief. To date the EPA has done nothing further and has indicated by letter to the PCA that it is deferring its enforcement actions to those of the PCA (specifically this lawsuit).

U. S. Steel, in support of the trial court's dismissal, again relies on the doctrine of primary jurisdiction which it urges requires judicial deferral to these pending administrative proceedings which involve essentially the same subject matter.

With regard to the NPDES permit, pending before the PCA, that agency is a party to the action and the doctrine of primary jurisdiction is not applicable for the reasons set forth above. As to the EPA proceeding, while that agency is not a party, it has deferred its enforcement action of Minnesota regulations to the PCA.

Moreover, both the Federal Water Pollution Act providing for

NPDES permits and the Federal Clean Air Act under which the EPA proceeding was commenced recognize that the "primary responsibility" for the control and prevention of pollution rests with the states, 33 USCA, § 1251(b) and 42 USCA, § 1857(a)(3). It is apparent that those acts were designed to assist the states in fulfilling their responsibility. Consistency with that congressional objective is further reason for not deferring judicial enforcement of our pollution control laws to the pending administrative proceedings.

Accordingly, we hold that under the circumstances of this case, the state is entitled to pursue directly its judicial remedies provided in Minn. St. 115.071, and that this action should not be deferred to the pending NPDES and EPA proceedings.

Reversed and remanded.