846 N.E.2d 597 (2006)
301 Ill.Dec. 272
Sharon A. PRICE et al., etc., appellees,
v.
PHILIP MORRIS, INCORPORATED, appellant.
No. 96236.
Supreme Court of Illinois.
May 5, 2006.
Petition for rehearing denied.
FREEMAN, J., joined by KILBRIDE, J., dissenting upon denial of rehearing.
Dissent attached.
Dissent Upon Denial of Rehearing
Justice FREEMAN, dissenting:
Plaintiffs petitioned for rehearing in this case. Because I believe that this court's judgment may have been erroneous, I dissent from the denial of the petition for rehearing.

I
As a preliminary matter, plaintiffs correctly question the precedential value of this court's decision. Plaintiffs observe that no rationale in the December 15, 2005, judgment received a majority of votes. In other words, there was no holding by a majority opinion  except for the disposition of the cause, i.e., four justices voted for reversal.
Justice Garman's opinion, holding that PMUSA's conduct was exempt under section 10b(1) of the Consumer Fraud Act (815 ILCS 505/10b(1) (West 1998)), was joined by Justice McMorrow. Justice Karmeier, joined by Justice Fitzgerald, did not specifically agree with Justice Garman's section 10b(1) holding. Slip op. at 74. ___ Ill.2d ___, ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Karmeier, J., specially concurring, joined by Fitzgerald, J.) ("I agree that the judgment of the circuit court should be reversed. In my view, however, that conclusion is not dependent on the applicability of section 10b(1) of the Consumer Fraud Act"). "On this point, the language this court uses when it delivers a divided opinion can use some clarification. A `special concurrence' is one where the authoring Justice joins both the opinion and the judgment. A `concurrence' is one where the authoring Justice joins only the judgment of the court." People v. Cruz, 162 Ill.2d 314, 389 n. 1, 205 Ill.Dec. 345, 643 N.E.2d 636 (1994) (Heiple, J., dissenting, joined by Bilandic, C.J.). In this case, Justice Karmeier expressly states: "I fully concur in the result reached by the majority." (Emphasis added.) Slip op. at 83, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Karmeier, J., specially concurring, joined by Fitzgerald, J.). Since Justice Karmeier does not join Justice Garman's opinion, his opinion should not be designated a "special concurrence" but, rather, a "concurrence."
Justice Garman's opinion in this case did not receive the assent of four justices. Therefore, it cannot constitute "the opinion of the court." Rather, Justice Garman delivered the judgment of the court in an opinion that presents the views of only a plurality of this court. "The only thing four justices agree on today is that reversal is necessary. In terms of precedent, none of the opinions filed in this case has the force of law." Cruz, 162 Ill.2d at 389 n. 1, 205 Ill.Dec. 345, 643 N.E.2d 636 (Heiple, J., dissenting, joined by Bilandic, C.J.).
Perhaps the fact that the court's decision is not binding precedent is for the best. As this dissent upon denial of rehearing will establish, a majority of this court has not responded, in any way, to the critical points plaintiffs have raised during this rehearing period. Given the plurality's *598 "erroneous and irresponsible interpretation of our Consumer Fraud Act" (slip op. at 83, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Freeman, J., dissenting, joined by Kilbride, J.)), we do well to remember that Justice Garman's interpretation of our Consumer Fraud Act does not have the force of law and the issues that the opinion discusses remain open for a better-reasoned adjudication.

II
In their petition for rehearing, plaintiffs contend that Justice Garman's plurality opinion overlooked or misapplied four critical points. Plaintiffs first contend that the plurality failed to properly apply the canons of statutory construction and, accordingly, misinterpreted section 10b(1) of the Consumer Fraud Act (815 ILCS 505/10b(1) (West 1998)). Specifically, plaintiffs argue that Justice Garman's plurality opinion fails to apply section 11a of the Consumer Fraud Act, which requires a court to liberally construe the Act (815 ILCS 505/11a (West 1998)), and overlooks the canon of statutory construction that exceptions in a statute should be liberally construed (see Mid-South Chemical Corp. v. Carpentier, 14 Ill.2d 514, 519, 153 N.E.2d 72 (1958) (and cases cited therein)).
Plaintiffs also contend that Justice Garman's plurality opinion misapplied the de novo standard of review, or mischaracterized the standard of review it actually utilized. Justice Garman's plurality opinion concluded that de novo review is appropriate because the actions of the FTC with respect to the use of the disputed descriptors are a matter of public record. Therefore, reasons the plurality, section 10b(1) is being applied to essentially undisputed facts. The plurality concludes that "we need not evaluate the credibility of witnesses or weigh conflicting testimony to determine whether the actions of the FTC have resulted in specific authorization of the use of these terms by cigarette manufacturers." Slip op. at 43, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Garman, J., joined by McMorrow, J.). However, plaintiffs argue that Justice Garman's plurality opinion did precisely this.[1]
Plaintiffs next contend that Justice Garman's plurality opinion relied heavily on the testimony of defendant's expert witness Dr. Peterman, yet at the same time ignores his testimony on cross-examination. Plaintiffs further argued that Justice Garman's plurality opinion overlooked PMUSA's "Petition for Rulemaking" filed in the FTC on September 18, 2002, which it submitted as an exhibit at trial. PMUSA's own trial witness, Nancy Lund, testified on direct examination that PMUSA filed this FTC petition for the following purpose:
"There were kind of three areas where we asked for guidance. One was in the measurement itself, the FTC method; one was about disclaimers about talking about what descriptions and low tar cigarette yields is actually all about; and the last one was some guidance on descriptors, such as lights and ultra lights."
Plaintiff's argue that this FTC petition and Lund's corresponding trial testimony, *599 PMUSA acknowledged in this litigation that, as of 2002, the FTC had never authorized PMUSA's use of the terms "lights" or "lowered tar and nicotine." Indeed, as plaintiffs reasoned in the petition for rehearing, if the FTC had previously authorized PMUSA to use the disputed descriptors as part of consent decrees it had entered into with other tobacco companies in 1971 and 1995, then there would have been no reason for PMUSA to petition the FTC for "guidance" and rulemaking on the use of these very same descriptors.
Plaintiffs also contend that the plurality acknowledged PMUSA's intentional fraud. Slip op. at 20, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Garman, J., joined by McMorrow, J.), at 75, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368 (Karmeier, J., specially concurring, joined by Fitzgerald, J.). However, according to plaintiffs, Justice Garman's plurality opinion erroneously concluded that the FTC "specifically authorized" such fraud. In reaching this erroneous conclusion, Justice Garman's plurality opinion misinterprets the scope of FTC voluntary consent orders, in direct conflict with federal precedent. Consent orders are binding only upon the named parties and represent a settlement in which neither side has insisted upon an adjudication on the merits. FTC consent orders represent a compromise between the parties to the consent order and no precedential weight is given to such a consent order for purposes of FTC enforcement proceedings against another party. Plaintiffs inform this court that we have no authority under state law, i.e., the Consumer Fraud Act or the Deceptive Practices Act, to expand the scope and meaning of an FTC consent order. As plaintiffs inform us, "federal law is clear that a consent order involving other parties cannot serve as authorization or permission for a different industry participant to engage in the same conduct-let alone conduct that is not covered by the prior consent order." Plaintiffs insist that the 1971 and 1995 consent orders "are no more than isolated voluntary agreements having nothing to do with PMUSA and the conduct at issue in this litigation."
Also, according to the petition for rehearing, Justice Garman's plurality opinion overlooks the fact that neither the 1971 nor the 1995 consent orders applied to PMUSA's misconduct and, in any event, PMUSA failed to comply with these orders.
Plaintiffs filed a supplement to their petition for rehearing, which focuses on their contention that Justice Garman's plurality opinion misinterprets the scope of FTC voluntary consent orders. Plaintiffs inform us that the FTC itself has plainly held that a "consent agreement [with one party] is binding only between the Commission and [that party]." In re Trans Union Corp., 118 F.T.C. 821, 864 n. 18 (1994), aff'd, 245 F.3d 809 (D.C.Cir.2001). Thus, according to plaintiffs, an FTC voluntary consent order cannot be used as a shield by a third party.
Indeed, plaintiff further informs us that the 1971 consent order, upon which Justice Garman's plurality opinion relies, was terminated by FTC rule between the FTC and the actual party to that voluntary agreement-American Brands. According to plaintiffs: "Therefore, it is not possible for this Court to rely upon this terminated order with a different party concerning different conduct as `specific authorization' for Philip Morris to engage in the intentional fraud at issue in this litigation."
These contentions are significant and persuade me to vote for rehearing.

*600 III
In plaintiffs' supplement to their petition for rehearing, pursuing their contention regarding the misinterpretation of the FTC voluntary consent orders, plaintiffs: (A) invoke the doctrine of primary jurisdiction, and (B) suggest a means by which this court could implement the doctrine.

A
"Despite the name, the doctrine of primary jurisdiction does not involve jurisdictional questions. It is a common law doctrine used to coordinate administrative and judicial decisionmaking." Red Lake Band of Chippewa Indians v. Barlow, 846 F.2d 474, 476 (8th Cir.1988). "Nor can it be questioned that the doctrine applies to the states." Agricultural Services Ass'n v. Commonwealth, 210 Va. 506, 509, 171 S.E.2d 840, 843 (1970); accord Segers v. Industrial Comm'n, 191 Ill.2d 421, 428, 247 Ill.Dec. 433, 732 N.E.2d 488 (2000) ("noting doctrine of primary jurisdiction is not technically a question of jurisdiction at all but rather a question of judicial self-restraint and relations between the courts and administrative agencies"), citing Peoples Energy Corp. v. Illinois Commerce Comm'n, 142 Ill.App.3d 917, 931, 97 Ill.Dec. 115, 492 N.E.2d 551 (1986); Flo-Sun, Inc. v. Kirk, 783 So.2d 1029, 1037-38 (Fla. 2001) ("It is also important to note that the application of the doctrine of primary jurisdiction is a matter of deference, policy and comity, not subject matter jurisdiction"); State v. United States Steel Corp., 307 Minn. 374, 380, 240 N.W.2d 316, 319 (1976) ("The judicially created doctrine of primary jurisdiction is concerned with the orderly and sensible coordination of the work of agencies and courts").
The doctrine of primary jurisdiction
"applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. Western Pacific R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956).
Accord Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203, 209 (1970) ("When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved"); Kellerman v. MCI Telecommunications Corp., 112 Ill.2d 428, 444-45, 98 Ill.Dec. 24, 493 N.E.2d 1045 (1986). Courts recognized long ago that coordination between traditional judicial machinery and administrative agencies "was necessary if consistent and coherent policy were to emerge. [Citation.] The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed." Port of Boston, 400 U.S. at 68, 91 S.Ct. at 208, 27 L.Ed.2d at 208-09.
The rationale for the doctrine of primary jurisdiction has been described as follows:
"`[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation *601 of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.'" Weinberger v. Bentex Pharmaceuticals, Inc., 412 U.S. 645, 654, 93 S.Ct. 2488, 2494, 37 L.Ed.2d 235, 242 (1973), quoting Far East Conference v. United States, 342 U.S. 570, 574-75, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952).
Accord Western Pacific, 352 U.S. at 64-65, 77 S.Ct. at 165, 1 L.Ed.2d at 132; Kellerman, 112 Ill.2d at 444-45, 98 Ill.Dec. 24, 493 N.E.2d 1045 (both cases quoting Far East Conference). There is no fixed formula for applying the doctrine of primary jurisdiction. In each case, the question is whether the reasons for the doctrine are present, and whether the purposes of the doctrine will be furthered by its application in the particular litigation. Western Pacific, 352 U.S. at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132.
In their supplement to their petition for rehearing, plaintiffs request that this court solicit the FTC's views on the issue of the 1971 and 1995 FTC voluntary consent orders. A majority of this court, however, apparently believes that this request should go unanswered with no response to the compelling legal arguments made in support of it. Unlike my colleagues, I believe that the plaintiffs in their supplemental petition for rehearing have raised legitimate questions about this court's decision and the denial of their request merits some form of discussion.
I note that plaintiff's have made this request for the first time, before this court, in their petition for rehearing. Consequently, we could deem this issue procedurally forfeited. See 188 Ill.2d R. 341(e)(7) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Indeed, since the doctrine of primary jurisdiction does not refer to the subject matter jurisdiction of a court, primary jurisdiction is an issue that can be waived or forfeited. Gross Common Carrier, Inc. v. Baxter Healthcare Corp., 51 F.3d 703, 706 (7th Cir.1995); Kendra Oil & Gas, Inc. v. Homco, Ltd., 879 F.2d 240, 242 (7th Cir.1989); Segers, 191 Ill.2d at 428, 247 Ill.Dec. 433, 732 N.E.2d 488; see, e.g., Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355, 366 n. 10, 114 S.Ct. 855, 863 n. 10, 127 L.Ed.2d 183, 195 n. 10 (1994) (declining to invoke, sua sponte, primary jurisdiction doctrine where parties failed to brief or argue it).
However, the waiver rule is a principle of administrative convenience, an admonition to the parties; it is not a jurisdictional requirement or any limitation upon the jurisdiction of a reviewing court. In this regard, this court has recognized that a reviewing court may, in furtherance of its responsibility to provide a just result and to maintain a sound and uniform body of precedent, override considerations of waiver that stem from the adversarial nature of our system. In re C.R.H., 163 Ill.2d 263, 274, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994); Hux v. Raben, 38 Ill.2d 223, 224-25, 230 N.E.2d 831 (1967); accord 155 Ill.2d R. 366(a)(5). In this case, for the following reasons, this responsibility outweighs plaintiffs' procedural default. See, e.g., Dillon v. Evanston Hospital, 199 Ill.2d 483, 504-05, 264 Ill.Dec. 653, 771 N.E.2d 357 (2002) (and cases cited therein).
As our rule of procedural default is a principle of administrative convenience for the courts, similarly, the doctrine of primary *602 jurisdiction "exists for the proper distribution of power between judicial and administrative bodies and not for the convenience of the parties." Distrigas of Massachusetts Corp. v. Boston Gas Co., 693 F.2d 1113, 1117 (1st Cir.1982). Accordingly, a court may examine, sua sponte, whether the doctrine applies. For example, in Western Pacific, 352 U.S. at 63, 77 S.Ct. at 165, 1 L.Ed.2d at 131-32, the United States Supreme Court felt obliged to address the issue of primary jurisdiction, although neither party had challenged that aspect of the lower court's rulings. Indeed, "courts often invoke the doctrine on their own motion." Fontande-Maldonado v. Lineas Aereas Costarricenses, S.A., 936 F.2d 630, 632 (1st Cir. 1991) (collecting cases); see also Syntek Semiconductor Co. v. Microchip Technology Inc., 307 F.3d 775, 780 n. 2 (9th Cir. 2002) ("Although the parties did not raise the question of primary jurisdiction, we may do so sua sponte"); Williams Pipe Line Co. v. Empire Gas Corp., 76 F.3d 1491, 1496 (10th Cir.1996) (same); Red Lake Band, 846 F.2d at 475-76 (addressing primary jurisdiction issue raised for first time in petition for rehearing); Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Central Ltd., 154 F.3d 404, 411 (7th Cir.1998) (acknowledging that court "would relieve the parties of their waiver" if primary jurisdiction doctrine were "of transcendent importance" to administration of statute); Gross Common Carrier, 51 F.3d at 706 n. 3 (noting that a court's failure to address the doctrine may, in some cases, constitute plain error).
Another recent example is found in Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir.2004). After oral argument in Cole, the United States Court of Appeals for the Seventh Circuit invited the FTC to file an amicus curiae brief to inform the court of the agency's views. Cole, 389 F.3d at 722 n. 2. The court of appeals apparently raised this issue sua sponte and was not concerned with any notion of procedural default.
Given the foregoing, I do not believe that plaintiffs' procedural default would serve as a bar to this court's granting of its request to address the doctrine of primary jurisdiction. Turning to the merits of plaintiffs' arguments, I agree with plaintiffs that the doctrine applies in the present case. It is clear that the reasons for the doctrine are present. Justice Garman's plurality opinion purports to resolve this case by construing and applying section 10b(1) of the Consumer Fraud Act (815 ILCS 505/10b(1) (West 2000)). The opinion attempts the following explanation:
"Operation of section 10b(1) is not dependent on the intent of Congress. Rather, it is dependent on the intent of the Illinois General Assembly to allow regulated entities to engage in commercial conduct that might otherwise be alleged to be fraudulent or deceptive without risk of civil liability, so long as that content is specifically authorized by the regulatory body." Slip op. at 74, ___ Ill.2d at ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2005 WL 3434368.
This is precisely the context for application of the primary jurisdiction doctrine. The application of section 10b(1) of the Consumer Fraud Act depends on whether the alleged conduct of PMUSA was "specifically authorized" by the FTC. Plaintiffs' Consumer Fraud Act claim, originally cognizable in the circuit court, requires the resolution of an issue, i.e., the existence and extent of the FTC's "specific authorization" of PMUSA's conduct, which lies within the special competence of the FTC. See Western Pacific, 352 U.S. at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132.
The purposes of the doctrine will be furthered by its application in this case. *603 The purposes of the primary jurisdiction doctrine are to: (1) ensure desirable uniformity in the determination of certain types of administrative questions, and (2) promote resort to administrative agency experience and expertise where the court is presented with a question outside its conventional experience. Western Pacific R.R., 352 U.S. at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132. The furtherance of these purposes is more than sufficient to override the effect of plaintiffs' procedural default. See, e.g., Dillon, 199 Ill.2d at 504-05, 264 Ill.Dec. 653, 771 N.E.2d 357.
In the present case, Illinois courts necessarily have become embroiled in the technical aspects of FTC voluntary consent orders to determine if the FTC "specifically authorized" PMUSA's conduct. Plaintiffs seek referral to the FTC of the question whether the terms of the FTC voluntary consent orders, involving American Brands and American Tobacco, specifically authorized representations by PMUSA, which was not a party to those consent orders. Referral in this case would obviously promote uniformity in the determination of this crucial issue and would correctly acknowledge the FTC's experience and expertise in the function and interpretation of FTC voluntary consent orders. See, e.g., In re Starnet, Inc., 355 F.3d 634, 639 (7th Cir.2004) ("Instead of trying to divine how the FCC would resolve the ambiguity * * * we think it best to send this matter to the Commission under the doctrine of primary jurisdiction"); Access Telecommunications v. Southwestern Bell Telephone Co., 137 F.3d 605, 609 (8th Cir. 1998) (finding that determination of dispositive issue would necessarily embroil court in technical aspects of FCC matter, and that "FCC has far more expertise than the courts" concerning administrative matter; concluding that "the need to draw upon the FCC's expertise and experience" was present).
If, as Justice Garman's plurality opinion contends, the FTC has been actively concerned with the complex policy issues that cigarette advertising presents, then prudential judicial restraint should counsel referral of this specific dispositive issue to the specialized agency that Congress intended to deal with this issue-the FTC. See generally Hansen v. Norfolk & Western Ry. Co., 689 F.2d 707 (7th Cir.1982). The FTC should first address this issue to avoid the possibility of a multitude of interpretations by several states of the same FTC voluntary consent orders, and to achieve a uniform administration of FTC policy. See Agricultural Services Ass'n, 210 Va. at 509, 171 S.E.2d at 842-43, quoting Service Storage & Transfer Co. v. Commonwealth of Virginia, 359 U.S. 171, 179, 79 S.Ct. 714, 719, 3 L.Ed.2d 717, 722 (1959).
Indeed, a question of how to interpret an administrative agency order is the sort of determination "classically committed to agency discretion under the doctrine of primary jurisdiction." Zapp v. United Transportation Union, 727 F.2d 617, 625 (7th Cir.1984). The denial of plaintiffs' referral request appears to constitute a rejection of "orderly and sensible coordination of the work of agencies and courts" (United States Steel, 307 Minn. at 380, 240 N.W.2d at 319), and indicates that this court is insensitive to the emergence of "consistent and coherent policy." Port of Boston, 400 U.S. at 68, 91 S.Ct. at 208, 27 L.Ed.2d at 208.

B
Plaintiffs suggest that this court can implement referral by soliciting the FTC to submit an amicus curiae brief. I agree with plaintiffs that the FTC, through an amicus brief, can speak definitively to the issues without undue delay. The only *604 question this court would primarily ask the FTC is simply what it intended to do when it entered into the 1971 and 1995 voluntary consent orders. I believe that "this question can be answered fully and quickly through amicus participation. If more elaborate agency proceedings are required, the agency can so inform us." Distrigas, 693 F.2d at 1119. Further, the FTC regularly accommodates referral requests. Indeed, a visit to the agency's website, www.ftc.gov, leads to an on-line sample of their amicus briefs.
My research has revealed two common examples of referral requests: one general and one more specific.
An example of a general referral is found in Cole v. U.S. Capital, Inc., 389 F.3d 719, 722 n. 2 (7th Cir.2004):
"After oral argument, the court invited the Federal Trade Commission (`FTC'), the agency charged with administering the FCRA [Fair Credit Reporting Act], to file a brief as amicus curiae. The FTC accepted the court's invitation, and the court expresses its thanks to the FTC for the assistance that it has rendered."
The Seventh Circuit's invitation took the form of the following order issued through the court's clerk office:
"Because this case presents issues that will have a significant effect on the enforcement of the Fair Credit Reporting Act, the court invites the Federal Trade Commission to file a brief as amicus curiae. If the Commission accepts our invitation, the brief should be filed within 45 days of this order. The brief should not exceed 30 pages.
The court would also appreciate the Commission's informing the court, as soon as practicable, as to whether it plans to file such a brief. This notification can be effected through a letter to the Clerk.
If the Commission accepts the court's invitation, the parties may file supplemental reply briefs addressing matters presented in the Commission's brief. Any such reply brief should not exceed 20 pages in length and shall be filed within 20 days of the filing of the Commission's brief with this court."
As the court acknowledged in its opinion, the FTC accommodated the court with an amicus brief, which aided the court in reaching its decision.
Another example of a general request is found in Distrigas, where the First Circuit Court of Appeals concluded its original opinion as follows:
"We therefore shall hold this case on the docket, while instructing the clerk to send a copy of this opinion to the Solicitor General along with this court's request that FERC [Federal Energy Regulatory Commission] file an amicus brief. The parties may file responses to FERC's brief. This court will then take such further action as is appropriate." Distrigas, 693 F.2d at 1119.
The next section of the opinion, captioned "MEMORANDUM AND ORDER," acknowledged receipt of the agency's amicus brief, and disposed of the case. Distrigas, 693 F.2d at 1119.
In contrast to a court's general request for an amicus brief, the form of the request can be very specific, resembling a certified question. For example, in Phillips v. AWH Corp., 376 F.3d 1382 (Fed. Cir.2004), the United States Court of Appeals for the Federal Circuit denied the petition for rehearing, but allowed rehearing en banc. The court invited amicus briefs from several administrative agencies, including the FTC, to address seven specific questions. Phillips, 376 F.3d at 1383. The FTC joined in an amicus brief and the court ultimately decided the case. *605 Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005).
With respect to the present case, I would have allowed plaintiffs' petition for rehearing. I also would have requested the FTC to file an amicus brief in order to address specifically the following question: Did the FTC specifically authorize Philip Morris' conduct (i.e., the use of the terms "Lights" or "Lowered Tar and Nicotine" on the packages of Marlboro Lights or Cambridge Lights from October, 1973 through February 8, 2001) through any of the following FTC actions:
(1) the 1971 consent order between the FTC and American Brands, Inc.;
(2) the 1995 consent order between the FTC and American Tobacco Company; and/or
(3) the 1970 voluntary agreement?
Further, was Philip Morris' use of "Lights" and/or "Lowered Tar and Nicotine" on the packages of Marlboro Lights or Cambridge Light cigarettes, governed by and thereby "in compliance" with the 1971 and 1995 consent orders?
Further, had the FTC accepted the invitation, I would have held this case on our docket until we could have decided this appeal with the benefit of the FTC's experience and expertise.

IV
Plaintiffs raise significant points which this court has overlooked or misapprehended. Plaintiffs also suggest a reasonable and generally accepted means by which this court can obtain the FTC's view of that agency's own consent orders. The adoption of this approach would obviously be of great benefit to this court in the present appeal. Further, such a basic request addressed to the FTC would indicate that this court: (1) is cognizant of the need for uniformity in the determination of administrative issues such as this, and (2) is sensitive to the need for prudential judicial restraint. Regrettably, however, the court appears more concerned with finality than reaching the most informed decision possible based on highly pertinent-if not dispositive-information from the very federal agency whose consent orders are at the heart of Justice Garman's analysis. The court's denial of the petition for rehearing does not speak well of this court. It is disappointing, and will ultimately prove to be embarrassing. History will be the judge.
For the foregoing reasons, I dissent from the court's denial of the petition for rehearing.
Justice KILBRIDE joins in this dissent.
NOTES
[1] Justice Garman's plurality opinion relies heavily upon the testimony of defendant's expert witness Dr. Peterman. Viewing the totality of Dr. Peterman's testimony, both on direct and cross-examination, it is clear that the facts relating to the FTC's supposed "specific authorization" of the fraud in this case were highly disputed by the parties. Justice Garman's plurality opinion selectively weighs Dr. Peterman's testimony, crediting his testimony on direct examination and ignoring his testimony on cross-examination. Such action on review is inconsistent with a de novo standard or review.