43 N.J. Super. 340 (1957)
128 A.2d 730
VERNON BUDDEN, PLAINTIFF-RESPONDENT,
v.
ALBERT GOLDSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1956.
Decided January 16, 1957.
*343 Before Judges CLAPP, JAYNE and FRANCIS.
Miss Ruth Rabstein argued the cause for the respondent (Pellettieri & Rabstein, attorneys).
Mr. George Y. Schoch argued the cause for the appellant (Mr. Irving H. Lewis, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this automobile-pedestrian negligence action, the plaintiff, Vernon Budden, was awarded a jury verdict of $5,000. Defendant now appeals, asserting that a number of prejudicial errors were committed at the trial. These errors largely center about the issues of injury and damages. No attack is made upon the result so far as it disposes of the elements of negligence of the defendant and contributory negligence of the plaintiff.
Two of the grounds of appeal may be disposed of quickly. The principal injury claimed by the plaintiff was a hernia. In the course of discussion of the need for surgical intervention, one of the medical witnesses spontaneously referred to the emergency operation that President Eisenhower had just undergone while the trial was in progress. A mistrial was sought on the ground that the reference was prejudicial to the defense. The motion was *344 denied and the court immediately and clearly instructed the jury that what had happened to the President had no bearing on the case and the observation about his operation should be disregarded entirely. Disposition of this type motion is left to the sound discretion of the trial court. An appellate tribunal will not interfere with his decision in the absence of a clear showing of mistaken use of his discretion. Schuttler v. Reinhardt, 17 N.J. Super. 480 (App. Div. 1952); Nelson v. Eastern Air Lines, Inc., 128 N.J.L. 46, 58 (E. & A. 1952). We find no such mistake here.
Next it is urged that plaintiff's counsel in summation addressed improper rhetorical questions to the jury about the amount of damages to be awarded. He said:
"* * * Now, I am not telling you how to arrive at your verdict, but you could probably ask yourself, what would I want if I was minding my own business, working, and somebody comes along and cracks into me and causes a hernia. What would I want for that injury? Would $5,000 be reasonable? Would $10,000 be reasonable? That is up to you what you think it is worth."
No objection was made during or at the close of the summation. However, at the conclusion of the charge of the court, defense counsel requested that the jury be instructed to disregard the comment. On this appeal the refusal to so charge is cited as error, the argument being that whenever such a remark is made during summation, the court is under the duty to point out that it is not binding on them and that damages should be admeasured on the basis of the rule of law with respect thereto as given to them by the judge. Here again we are dealing with a discretionary matter and the record reveals no legal error. For the most recent judicial exposition on the subject of such comments by counsel in summation, see Botta v. Brunner, 42 N.J. Super. 95, 107, 108 (App. Div. 1956). We think trial courts can and should be relied upon to keep these matters within reasonable limits.
The remaining assignments of error relate generally to the award of $5,000 for injuries suffered in the accident.
*345 According to the evidence, plaintiff visited the hospital for first aid twice on the day of the mishap. He was given a rather complete physical examination and X-rays were taken but no injuries were found beyond some minor bruises and contusions of the legs and right wrist. A hernia did not appear. The hospital bill was $27.50. From that time to the date of trial, although Budden was examined on three occasions, at a cost of $25, he never had any further medical treatment, except to the extent that the wearing of a truss can be said to constitute treatment.
After the second hospital visit, while taking a bath at home in the early evening, he discovered a lump in the right groin. Thereupon he went to the office of his family physician who diagnosed a simple, reducible right inguinal hernia. A truss was prescribed which had been worn during the intervening thirty months period.
No time was lost from work and the total out of pocket disbursements were $52.50. The cost of the truss was not proved.
The evidence was adequate to justify a finding by the jury that the hernia was produced by the mishap. And it appeared that since the accident there had been no change in size or reducibility. No complications whatever had developed. The plaintiff said the truss was uncomfortable and had caused a callus on his body. In describing his present complaints, he said:
"Actually there is no severe pain or anything. The only thing, if you get a cough it sends a million stars going out from your eyes. Occasionally if I do a piece of heavy work, I get the same way, stars, and I am awfully tired all the time."
The family doctor opined that the hernia can be cured permanently by an operation. The testimony shows that Budden had had a successful operation on the other side of his body more than 20 years ago. In explaining the failure to submit to operation over the 30 months since this accident, he said he had nine children; the doctor had told him the operation would require an eight to ten weeks *346 disability. During this time his only income would be $30 a week, presumably as a sickness benefit of some sort, and he could not take care of his family on that sum. He denied that he would rather wear the truss than have the operation; if he had the money he "would rather have the operation." Defendant's examining physician testified that Budden expressed a preference for the truss rather than the operation and he noted on his report "apparently * * * afraid of an operation." On the witness stand, plaintiff said: "I don't believe I told him that."
Medical proof was introduced to the effect that the expenses of the operation would run from $500 to $750 and that eight to ten weeks of work would be lost. His earnings were $100 weekly.
The charges of error arise out of the discussion by some of the medical witnesses of possible consequences of the hernia if an operation is not performed or if one is performed. Some of the testimony became part of the proof without objection, other parts of it were objected to. Examination of the entire record satisfactorily demonstrates that the basic problem was adequately presented to the court and ought to be considered on this review.
In the admeasurement of damages, it is well known that no recovery can be allowed for possible future consequences of an injury inflicted by a wrongdoer. Bernadsky v. Erie R. Co., 76 N.J.L. 580, 581 (E. & A. 1908); Houston v. Traphagen, 47 N.J.L. 23 (Sup. Ct. 1885); 20 Am. Jur., Evidence, § 863 (1939); 25 C.J.S., Damages, § 149 (1941). In order for suggested future results to be includible as an element of damage, it must appear that they are reasonably certain or reasonably probable to follow. Kimble v. Degenring, 116 N.J.L. 602, 604 (Sup. Ct. 1936); Wolcott, Johnson & Co. v. Mount, 36 N.J.L. 262, 272 (Sup. Ct. 1873), affirmed 38 N.J.L. 496 (E. & A. 1875); 15 Am. Jur., Damages, § 24 (1938); 20 Id., Evidence, § 863; 25 C.J.S., supra, § 31, Annotation, 81 A.L.R. 423 (1932).
*347 The A.L.R. annotation, supra, indicates that many of the authorities throughout the country use the expression "reasonably certain" or "reasonable certainty" as the test and consider "reasonably probable" or "reasonable probability" inadequate and erroneous; others accept the latter statement. Our cases do not seem to have dealt specifically with the question of whether the two have the same significance in relation to quantum of proof, and so may be used interchangeably. It seems to us that in a resolution of the conflicting interests involved, reasonable probability is the just yardstick to be applied. Basically, our view comes down to this: a consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished.
Reference to a portion of the cross-examination of defendant's medical expert will reveal strikingly how the distinction between possible and probable consequences of the hernia was ignored:
"Q. What can develop with a hernia in the absence of an operation?
Mr. Lewis: I object to that as purely speculative.
The Court: Speaking generally now. You are speaking generally of what could develop.
A. Two things. A man without an operation should wear a truss, because if he doesn't wear a truss the hernia which is a simple hernia, if he were to do heavy lifting he might get a descent into the scrotum and further discomfort.
Q. What is the other? A. It is rare, but you could get a thing called a strangulated hernia or incarcerated hernia, which is the same thing, which is a hernia and usually it has been present for many years in which it goes down into the scrotum and twists itself and that requires an immediate operation.
Q. Could it cause peritonitis?
*348 A. If you don't operate on them you can get an inflammation of the bowel and peritonitis.
Q. He could have peritonitis? A. If you get incarcerated hernia where the hernia goes down into the scrotum it twists itself. It is rare, but if you don't operate at once, you might get peritonitis.
Q. And death can ensue from it in such a case?
Mr. Lewis: I object to that.
The Court: Yes.
A. [In spite of the sustained objection  assuming `yes' had that connotation] Incarceration requires immediate operation because if you don't, you can get peritonitis, and it is possible you can die from it. (Insertion ours)
Q. This can all result from a simple hernia, can't it? A. Any hernia which is present, it could possibly. It does not usually. It is rare, but it can incarcerate." (Emphasis added)
The same situation arose in connection with the testimony of one of plaintiff's physicians.
"Q. What can happen while he has the hernia unrepaired?" Objection was interposed on the ground that speculation was involved and the court said:
Just a minute. It seems to me, Mr. Pellettieri, we are talking generally what can happen when hernias are unrepaired, that is one thing; now I think it might be speculative when we talk about this particular plaintiff. He can talk generally about the possibilities of this and that happening, and the probabilities of happening generally.
Mr. Pellettieri: I will take your Honor's suggestion.
Q. What can happen generally, if the hernia is not repaired?
A. Well, of course, generally, as time goes on 
Mr. Lewis: Excuse me, wouldn't that depend on the type of hernia and the extent of it?
The Witness: I will try to speak in general.
Mr. Lewis: This roof might cave in too, and it might not.
The Court: You will have a chance on cross examination to bring out all that and more, if you see fit.
Now, I think we have here, he was asked to describe a hernia, and the Doctor has; now, the question is, and we might even confine it to the type hernia you found here, Doctor.
Mr. Lewis: That is right.
The Court: And the question would be what can happen with one that is this type of hernia.
Mr. Lewis: As to this particular individual.
The Court: If it remains unrepaired.
Mr. Lewis: That is right.
A. Well, of course, it would be the same with any hernia. I use this illustration again?
*349 The Court: Yes.
A. (continued) This knuckle I got is going to come down and come out here (indicating), if this becomes irritated and inflamed and persists, then you have a bowel obstruction. Now, at this time a bowel obstruction is rather notable because of our President, and there has to be an operation, it is one of those things that has to be done when there is a bowel obstruction. * * *
Mr. Lewis: I object to this, and I ask for a mistrial."
A ten minute recess was taken for the discussion of this motion and on the resumption of the interrogation the following question, which was grossly leading and not in accordance with the possible results that were being spoken of, was put to the doctor:
"Q. Doctor, continuing the probability of the result of the strangulated hernia, is there anything else you wanted to add to that? A. No, sir, because actually when a hernia strangulates it is a mechanical procedure that would have to be gone through to relieve that.
Q. What happens when it strangulates? A. Well, that piece of gut is just blocked off.
Q. What does it do to the rest of the body, that is what I want to bring out? A. If allowed to go on and not corrected, it produces death." (Emphasis added)
Obviously this medical testimony sounded in speculation and conjecture. Evidence of possible consequences is improper whether put in terms of patients generally or the individual plaintiff. And in the light of the established rule, the prejudice flowing therefrom is manifest.
Similar criticism is offered of testimony introduced by plaintiff relating to possible dangers incident to a hernia operation. Statements were elicited from the physicians as to the "hazards" associated with the operation and as to the complications that can develop. Such proof stands on a somewhat different basis. The plaintiff did not assert any fear of the operation. In fact, he denied a preference for the truss and assigned as the reason for failure for thirty months to submit to surgery the inability to support his large family during the necessary hospitalization and convalescent period. Actually, the defense produced the evidence *350 which attributed to the plaintiff fear of an operation and a choice of the truss over surgery. No direct question was put to Budden by either side as to whether he intended to undergo surgical repair if the financial problem he referred to were eliminated. But, even though slim, there was enough proof to create a factual issue for jury determination as to whether he was afraid of an operation and did not intend to submit to it. In that connection it was clearly proper to show the hazards connected with surgical intervention.
It is a well-known general rule that a person injured by another's wrong is obliged to exercise ordinary care to seek medical or surgical treatment so as to effect a cure and minimize damages. Failure or refusal to do so bars recovery for consequences which could have been averted by the exercise of such care. Annotation, 48 A.L.R.2d 348, 349 (1956); 15 Am. Jur., Damages, § 39 (1938); cf. 1 Larson, Workmen's Compensation (1952), § 13.22. However, in this state the injured person is regarded as having the right to avoid "if he chooses, peril to life, however slight, and undue risks to health, and anguish that goes beyond the bounds of reason." And a refusal to accept an operation is not unreasonable and "therefore unjustifiable in the legal sense, unless it is free from danger to life and health and extraordinary suffering, and, according to the best medical or surgical opinion, offers a reasonable prospect of restoration or relief from the disability. And the reasonableness of the refusal, tested by this standard, is one of fact." Robinson v. Jackson, 116 N.J.L. 476, 478 (E. & A. 1936). In a workmen's compensation case, where the medical evidence showed that out of 23,000 hernia operations only 48 had been unsuccessful or resulted in death, the Supreme Court said:
"Although the peril to life seems to be very slight * * * nevertheless the idea is appalling to one's conscience that a human being should be compelled to take a risk of death, however slight that may be, in order that the pecuniary obligation created by the law in his favor against his employer may be minimized." McNally v. Hudson & Manhattan R. Co., 87 N.J.L. 455, 457 (Sup. Ct. 1915), affirmed per curiam, 88 N.J.L. 729 (E. & A. 1916). *351 As noted, the opinion was delivered in 1915. Since then, presumably the advances in medical science have reduced the danger even further. But, according to the undisputed testimony of the doctors in this case, there is still present some hazard to life, which under the Robinson case a plaintiff may elect to avoid.
In dealing with the matter of operation, the trial court said in his charge to the jury:
"Now, in relation to the testimony in regard to the injury and the duration thereof, there are proofs that an operation was, is, and will be the only means of considering or attempting to cure plaintiff's condition. I state to you as a matter of law that no man is required to submit to an operation. Every man is an individual with a freedom of choice as to that; and these facts and this law must be considered with all the facts and all the other law in measuring damages if you determine that this plaintiff is to have a verdict."
The statement is broader than the doctrine announced by the Robinson case, supra, because it sanctioned a refusal to submit to operation even if there were no peril involved.
Another portion of the charge pointed out that:
"He claims that when he undergoes an operation his hospital and doctor bills will amount to a sum ranging between $500 and $700. He claims also, that he will be out of work for approximately eight to ten weeks and that his loss of earnings will amount to $100 per week."
Although no objection was interposed to the instructions on the subject of operation and expenses thereof, since the matter is to be retried comment thereon may be helpful. It is true that on the proof plaintiff was entitled to elect or reject surgery. But in such a situation in order to bring about an understanding of the problem and a just result to both parties, the jury should be told to reach a decision as to whether plaintiff did or did not desire an operation; and that if they concluded he desired and intended to have one, the reasonable costs and wage loss should be included in their verdict. Also, an instruction would be in order that in the event of an operation, the medical testimony as to the *352 result thereof in the way of cure of the hernia should be considered in the admeasurement of damages for prospective pain and suffering and disability, if any. On the other hand, if they decided that plaintiff did not wish an operation, the proper instruction would be that expenses and wage losses connected with it could not be awarded. And here the charge should impart the information that in such case in studying prospective damages, the pain and suffering and disability associated with the unrepaired hernia as indicated by the proof were matters for their consideration.
For the reasons stated, the judgment is reversed and the cause is remanded for a new trial as to damages only.