86 N.J. Super. 48 (1964)
205 A.2d 895
JOSEPHINE GRASSI AND JOSEPH GRASSI, PLAINTIFFS-RESPONDENTS,
v.
PENNSYLVANIA RAILROAD CO., A CORPORATION OF PENNSYLVANIA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1964.
Decided December 17, 1964.
*50 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Stephen V.R. Strong argued the cause for appellant (Messrs. Strong & Strong, attorneys; Mr. John V.R. Strong, of counsel).
Mr. Sidney A. Brass argued the cause for respondents (Messrs. Brass & Brass, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
In this negligence case defendant appeals from a judgment entered in the Middlesex County District Court on a jury verdict of $10,000 in favor of Josephine Grassi, and a verdict of no cause of action upon the per quod claim of herhusband Joseph Grassi.
The facts relevant to the accident are essentially undisputed. On December 29, 1960 Mrs. Grassi, then aged 60, was employed in Newark, New Jersey. At about 4:35 P.M. on that date she boarded a passenger train of the defendant at its station in Newark and arrived at her destination, the Rahway station, a few minutes before 5 P.M. Freezing rain was falling at the time. She was seated in the second car of the train "about three or four seats back." Along with a number of other passengers she was leaving through the front door of that car. She testified:
"I waited until the train stopped and there were people getting out, but when I went out, I was going right out to the door. There was nobody there. I just put my left foot out to get off the train. * * * I got up and started to walk down, I put my left foot out on the platform. There was a little snow on there. It was raining, sleeting and freezing, that rain. I went to put the weight on my left foot and *51 lift up my right foot. I fell back and I hurted my knee and the front of the shin of my leg. My hand turned over and my thumb and fingers, wrist was hurt."
Two men picked her up and the train conductor came to the scene. They sat her on a bench and then called the police. An ambulance was summoned. She was carried by stretcher to the ambulance and taken to the Rahway Hospital.
Mrs. Grassi had been employed for 27 years. She was the sole breadwinner for herself and her husband with whom she lived. Her husband, aged 72 at the time of the trial, had been retired for seven years prior to that time. As the result of this accident and a subsequent accident which occurred on December 6, 1962, which the jury on the basis of the medical proofs could have found was causally related to the accident in question, Mrs. Grassi sustained a substantial loss of wages and incurred bills for hospital and medical treatment. The trial court, without objection, expressly charged the jury that all of those losses were recoverable by Mrs. Grassi (if they found the defendant liable), and not by her husband. The court limited the husband's per quod claim to such sum as the jury might find represented compensation for the loss of services and consortium of his wife. The husband did not testify. The evidence respecting the loss of services suffered by him was minimal, being confined to testimony that he performed minor household chores during the period of his wife's disability.
The first point raised by defendant on this appeal is that the verdicts of the jury in favor of the injured wife and against the per quod claims of her husband were so inconsistent and irreconcilable as to require reversal. We disagree. It is, of course, settled that inconsistent and irreconcilable verdicts are fatally defective and should normally be set aside. The grounds customarily assigned as the reason therefor are that the jury failed to comprehend the issues involved in the trial and, by their verdicts, demonstrated their unfitness to determine the rights and obligations of the respective parties. Brendel v. Public Service Elec. and Gas Co., 28 N.J. Super. *52 500, 507 (App. Div. 1953). In the Brendel case a jury awarded a verdict in favor of a husband and father who sued per quod to recover for expenses incurred for medical attention, hospitalization, etc., for his wife and children, for the cost of employing domestic help while his wife was incapacitated, and for the loss of his wife's services. The jury also assessed damages in favor of the wife, but denied recovery to the two infants. In that case the court noted that the injuries to the infants "were quite slight" and that while the jury would have been justified in rendering small or nominal verdicts in favor of the infants, their failure to do so was not error of which the defendant could complain, and did not justify invoking the rule relating to irreconcilable or inconsistent verdicts. The basis of the holding was that two things are necessary to support a verdict in favor of a plaintiff in a negligence suit, namely, proof of negligence on the part of defendant, and proof of a compensable injury suffered by plaintiff, 28 N.J. Super., at pp. 508, 509, citing Watkins v. Myers, 12 N.J. 71 (1953).
In the case at bar the jury might well have concluded that the proofs did not establish the claim of loss of services, or that the loss, if there was one, was minimal and incapable of pecuniary evaluation, in either of which events the verdict rejecting the husband's claim would not have been inconsistent with the verdict in favor of the wife. Furthermore, we deem it of some importance that defendant objected to the court's submitting to the jury the husband's claim, taking the position that no proof had been submitted in support of it. Lastly, we entertain considerable doubt that defendant is in a position to complain of the failure of the jury to award damages to the husband and to convert that complaint to the assertion that the verdicts were inconsistent. Compare Windisch v. Comerford Const. Co., 8 N.J. Misc. 70, 148 A. 926 (Sup. Ct. 1930); Dumphy v. Thompson, 3 N.J. Misc. 1086, 130 A. 639 (Sup. Ct. 1925).
Plaintiff called as a witness Esther Karmazin, a fellow passenger on defendant's train, who alighted therefrom at the *53 Rahway station, using the same door of the same car that plaintiff used. Mrs. Karmazin corroborated the testimony of plaintiff concerning the weather and the icy condition of the railroad platform. She did not see the plaintiff fall and gave no testimony on this aspect of the case. However, on direct examination the following appears:
"Q. What happened as you were getting off?
A. When I was getting off?
Q. Yes. A. I fell off."
Defendant's attorney immediately objected and asked that the answer be stricken. The court sustained the objection and struck the answer without objection by plaintiff's attorney. Later on in the direct examination the following developed:
"What observation did you make of the rest of the platform? A. I can't say because I can't see too far. I only noticed the part where I fell, it was slippery. It was.
MR. STRONG: I object to that.
THE COURT: Wait a minute, Mr. Strong. She only knows where she got off. Now ask her if she saw Mrs. Grassi.
MR. STRONG: I think she said where she fell 
THE COURT: Let's get to the facts. We will never quite make it.
MR. BRASS: Except this, your Honor. I have something here.
THE COURT: I am trying to help you get into evidence what this lady knows that is competent testimony. What did she see and let her tell us what she saw.
By Mr. Brass:
Q. Tell us what happened after you stepped 
THE COURT: We don't want to know. We don't want to know if you fell or you didn't fall and we don't want to know whether you were injured. That has nothing to do with this case. We would like to know what you saw when you got off the train."
Defendant's attorney did not at any time move for a mistrial because of the allusion by Mrs. Karmazin to her fall, nor did he submit a request to charge on the subject. Defendant now contends that the trial court "erroneously permitted the testimony of Esther Karmazin," citing Karmazin v. Pennsylvania R.R., 82 N.J. Super. 123 (App. Div. 1964), in which it was held that "[a] prior accident may be shown only, and subject to cautionary instructions, where calculated to establish the *54 existence of a condition long enough to bespeak notice thereof * * *." 82 N.J. Super., at p. 129.
In Karmazin, supra, plaintiff was allowed to testify as part of the res gestae that as she was being assisted to her feet after the fall she "heard someone say the other woman fell." Under the rule above noted, this court held the admission of this evidence to be error. The situation here, however, is quite different. In the first place, the court struck from the record Mrs. Karmazin's testimony concerning her fall when the defense so moved. Furthermore, the trial court in the presence of the jury made it clear that the incident to which the witness referred had no bearing whatever on the present case. Moreover, we are satisfied that this testimony was not sought to be injected into the case by plaintiff, but crept into the trial through the understandable inability of a lay witness to testify to the weather conditions and the condition of the platform without relating what had happened to her as a result of such conditions. Indeed, it is difficult for us to see how mention by Mrs. Karmazin of her fall could have been avoided in full justice to plaintiff. She was offered by plaintiff as a disinterested witness with whom plaintiff was unacquainted. In the course of her testimony she said that she rode in the ambulance with plaintiff. If Mrs. Karmazin had somehow avoided mentioning her fall and consequent injuries, the jury might well have wondered why it was that this disinterested stranger accompanied plaintiff to the hospital. In any event, we conclude that no error was committed.
Defendant further contends that the trial court erroneously permitted plaintiff's medical witness Dr. Abraham Thaler to testify "as to possible future harm to plaintiff if plaintiff failed to continue [medical] treatments," citing in support of its argument Budden v. Goldstein, 43 N.J. Super. 340 (App. Div. 1957).
The Budden case iterates the familiar rule that "[i]n the admeasurement of damages, it is well known that no recovery can be allowed for possible future consequences of an injury inflicted by a wrongdoer." (43 N.J. Super., at p. 346). *55 In Budden it was held error to permit a medical witness to testify to the possible consequences of the failure to have a hernia repaired by operation. The case at bar is readily distinguishable. At the time of trial, more than two years after the accident upon which the suit was based, plaintiff was still under Dr. Thaler's treatment for thrombophlebitis of the right leg. He testified that it was his recommendation that treatment should be continued at least once a week and that the charge for such treatment would be $7. He assigned as the reason for the recommendation that they are a measure taken to prevent the possible escape from the injured blood vessel of a clot which could pass through the blood stream and result in serious consequences if it lodged in plaintiff's heart or lungs. In view of defendant's objection to this line of testimony, the court intervened as follows:
"Q. What you are saying is that this is something that must be guarded against and warrants your continuing to see the patient on a more or less recurring basis. Is that it? A. Exactly.
THE COURT: All right. That's the purpose I'm letting him testify to, Mr. Strong. It's hard to confine the testimony narrowly and I want to make it clear the reason I overruled the objection is to give the doctor the opportunity of explaining to us why he feels that he must continue to in effect supervise the future course of the medical treatment that he says is necessary in this particular case. Anyway, your objection is noted and I want it understood the purpose from the jury's point of view why I am permitting the testimony."
Plaintiff did not seek damages upon the basis of the possibility that what the doctor sought to prevent would occur. Moreover, the trial court in its charge took pains to instruct the jury that I could not "conclude or assume" that Mrs. Grassi at some future time would suffer the consequences of a thrombus in the blood stream and so the jury could not compensate her for the same. In these circumstances we perceive no error in the admission of the challenged portions of Dr. Thaler's testimony for the limited purpose stated.
Defendant argues also that the verdict was excessive. As we have already noted, the jury was entitled to find causal relationship between the accident of December 29, 1960 and *56 the mishap which plaintiff suffered on December 6, 1962, and we must assume that the jury did so find. In view of the medical testimony of plaintiff's doctors, her hospital expenses, her medical bills, past and prospective, and her substantial loss of wages, we cannot say that the verdict was excessive.
Affirmed.