(No. 91517

DIANE DILLON, Appellee, v. EVANSTON HOSPITAL
*et al.*, Appellants.

*Opinion filed May 23, 2002.*

484

486

FITZGERALD, J., took no part.
HARRISON, C.J., concurring in part and dissenting in part.

David J. Loughnane and Charlene M. Sheridan, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellants.

Corboy & Demetrio, P.C., of Chicago (Thomas A. Demetrio, Barry R. Chafetz, Kenneth T. Lumb and Philip H. Corboy, of counsel), and Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa (Michael T. Reagan, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Diane Dillon, brought a medical malpractice action in the circuit court of Cook County against, *inter alios*, Evanston Hospital (hereafter hospital) and Dr. Stephen Sener. A jury found against these particular defendants and in favor of plaintiff. The appellate court affirmed. No. 1—98—2893 (unpublished order under Supreme Court Rule 23). We allowed the hospital and Dr. Sener's petition for leave to appeal (177 Ill. 2d R. 315(a)). We now affirm the judgments below in part and reverse in part, and remand the cause to the trial court for a new trial solely on the issue of damages for the increased risk of future injury.

## BACKGROUND

During the course of treatment for breast cancer, Dr. Sener surgically inserted a catheter into a vein in plaintiff's upper chest under the clavicle. He performed the insertion on April 20, 1989. The purpose of the catheter was to provide a means to administer chemotherapy and to draw blood without repeatedly inserting needles into plaintiff's veins. The catheter inserted into plaintiff was approximately 16 centimeters long.

After plaintiff completed chemotherapy, the catheter ceased to function, and on July 13, 1990, Dr. Sener removed it. However, unbeknownst to plaintiff—or Dr. Sener—the catheter was not removed in its entirety. Rather, Dr. Sener removed only a seven-centimeter portion of the catheter. A nine-centimeter catheter fragment remained in plaintiff. She was not informed of any abnormality despite the fact that she had a chest X ray taken at the hospital in December 1990.

In December 1991, plaintiff had a routine chest X ray taken at a different hospital. The X ray revealed that the catheter fragment had migrated to plaintiff's heart. The tip of the fragment is embedded in the wall of the right

atrium or the right ventricle. The rest of the fragment is floating free in plaintiff's heart.

Upon learning that the fragment was in her heart, plaintiff met with Dr. Sener. He could not recall his specific actions in removing the catheter from plaintiff. However, he acknowledged that the fragment was in her heart. Based on the length of time that the fragment had been there, Dr. Sener recommended that plaintiff not attempt to remove it because several risks were attendant to removal. For example, all or part of the fragment could escape and travel further into the heart, making retrieval more difficult, or removal could tear the heart wall. Dr. Sener opined that it would be more dangerous to attempt to remove the catheter fragment than it would be to leave it in place.

Plaintiff sought opinions from other physicians; all but one agreed with Dr. Sener. Based on the majority of medical opinions she received, plaintiff decided to leave the catheter fragment in her heart.

Plaintiff filed a complaint for medical malpractice against Dr. Sener, Dr. David Lim, who assisted in the insertion, the hospital, and the catheter's manufacturer, Davol, Inc., a division of Bard, Inc. (hereafter Davol). After the completion of pretrial proceedings, the trial court entered summary judgment in favor of Dr. Lim. Trial commenced on plaintiff's fifth amended complaint, which named as additional defendants radiologist Dr. Ronald Port and nurse Kathy Henderson.

At the close of a trial, the jury found in favor of plaintiff and against Dr. Sener and the hospital. However, the jury found in favor of the remaining defendants. Dr. Sener and the hospital did not present the jury with any special interrogatories to determine on which basis the jury found defendants to have been negligent. The jury awarded plaintiff $1.5 million for past pain and suffering, $1.5 million for future pain and suffering, and

$500,000 for the increased risk of future injuries. Plaintiff had not sought compensation for past or future medical expenses. Dr. Sener and the hospital appealed.

The appellate court affirmed, with one justice dissenting. No. 1—98—2893 (unpublished order under Supreme Court Rule 23). Dr. Sener and the hospital appeal. Additional pertinent facts will be discussed in the context of the issues raised in this appeal.

## DISCUSSION

### I. Fifth Amended Complaint: Negligent Insertion

Dr. Sener and the hospital first contend that plaintiff's fifth amended complaint was untimely.

Plaintiff filed her original complaint on July 1, 1992. Count I alleged that the hospital was negligent in (1) allowing the catheter to be removed in a way that caused a portion to remain in plaintiff, (2) failing to advise plaintiff of the fact that a portion of the catheter remained in her, and (3) providing a defective catheter. In count II, plaintiff alleged that Dr. Sener failed to remove the catheter. Similarly, in count III, plaintiff alleged that Dr. Sener's actions in not removing the entire catheter were negligent. Notably, the original complaint contained no allegations against Dr. Sener or the hospital that the insertion of the catheter was negligent.

Plaintiff attached to the original complaint a report of a reviewing health professional. The report stated that the cause of action was meritorious because, *inter alia*, the catheter was improperly placed.

On April 19, 1993, plaintiff filed a second amended complaint adding a count against Dr. Lim, which alleged that he assisted in plaintiff's surgery and that he negligently inserted the catheter. On March 21, 1995, the trial court granted him summary judgment.

Plaintiff continued to amend her original complaint throughout the pretrial proceedings as discovery was be-

ing conducted. In January 1994, Davol answered plaintiff's fourth amended complaint. Davol asserted the affirmative defense that plaintiff's injuries were proximately caused by the intervening and superseding negligent acts as described in the reports of reviewing health professionals attached to the fourth amended complaint. One of those reports stated in part that the catheter had been improperly placed. On September 6, 1996, plaintiff filed answers to supplemental interrogatories regarding her expert witness, Dr. Michael Blank. Dr. Blank had a new opinion after reviewing the interrogatory answers of Davol, which disclosed opinions critical of the catheter's insertion. According to Dr. Blank, if Dr. Sener had inserted the catheter in the manner Davol asserted, then Dr. Blank believed that Dr. Sener had deviated from the standard of care in inserting the catheter, which ultimately resulted in the catheter's fracture. On November 6, 1996, in supplemental answers to interrogatories, plaintiff disclosed that Dr. Blank might opine, based on his review of the X rays, that Dr. Sener negligently inserted the catheter in an improper location that ultimately resulted in the catheter's fracture.

In May 1997, Davol disclosed that Dr. Paul Goldfarb would testify to his opinion that the catheter was improperly inserted, causing it to fracture as the result of repeated compression by the clavicle as the catheter passed over the first rib.

On November 17, 1997, plaintiff moved to file her fifth amended complaint adding allegations that the catheter was improperly inserted. The trial court allowed plaintiff leave to file because the removal of the catheter was, according to the court, "a completion of the same process" as the insertion. Plaintiff alleged as follows. Counts I and II alleged that Dr. Sener and the hospital negligently inspected, inserted, and removed the catheter; failed to ascertain that the catheter fragment

remained in plaintiff; and failed to advise plaintiff that the fragment remained in her body. Count III alleged that Dr. Sener's actions should be considered negligent under the theory of *res ipsa loquitur*. Count IV alleged that Davol negligently designed and manufactured the catheter; count V alleged that Dr. Port failed to see the catheter fragment in the December 1990 X ray; and count VI alleged that nurse Henderson improperly maintained the catheter after its insertion in plaintiff. Jury selection began the next day.

Dr. Sener and the hospital contend that the trial court abused its discretion in allowing plaintiff to file her fifth amended complaint, containing the allegations of negligent insertion, because it was not timely. In essence, they believe that plaintiff had ample knowledge from the outset of the litigation that Dr. Sener inserted the catheter and improperly waited until the eve of trial to officially allege negligence regarding the catheter's insertion. Plaintiff responds that Dr. Sener and the hospital cannot complain because plaintiff presented several theories of negligence, the jury returned a general verdict against them on the negligence claim, and they failed to submit a special interrogatory on any matter. Dr. Sener and the hospital in turn reply that we may not consider plaintiff's defense because she did not raise it in the appellate court.

We may consider plaintiff's defense of the trial court's judgment. An appellee in the appellate court may raise a ground in this court which was not presented to the appellate court in order to sustain the judgment of the trial court, as long as there is a factual basis for it. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 502 (1988); *Hammond v. North American Asbestos Corp.*, 97 Ill. 2d 195, 209 (1983).

Count I of the fifth amended complaint alleged several theories of negligence in addition to the theory of

which Dr. Sener and the hospital complain, *i.e.*, negligent insertion. They have not challenged the sufficiency of the evidence on any of those other theories. Also, the jury returned a general verdict against them on the negligence claim. Section 2—1201(d) of the Code of Civil Procedure provides in pertinent part:

> "If several grounds of recovery are pleaded in support of the same claim, whether in the same or different counts, an entire verdict rendered for that claim shall not be set aside or reversed for the reason that any ground is defective, if one or more of the grounds is sufficient to sustain the verdict ***." 735 ILCS 5/2—1201(d) (West 2000).

Because Dr. Sener and the hospital did not submit special interrogatories, there is no way of knowing on what theory the jury found defendants negligent. "When there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant, having failed to request special interrogatories, cannot complain." *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987). We shall not set aside the verdict based on this contention.

## II. *Res Ipsa Loquitur*

Dr. Sener and the hospital next contend that the trial court erred in instructing the jury on plaintiff's theory of *res ipsa loquitur* against Dr. Sener. As with the prior contention, plaintiff defends the judgment by pointing to the jury verdict. The verdict form shows that the jury returned separate verdicts in favor of plaintiff against Dr. Sener on both negligence and *res ipsa loquitur*. Because the evidence supports the verdict based on negligence, we shall not set aside the verdict based on this contention. See *Miller v. DeWitt*, 37 Ill. 2d 273, 286-87 (1967); 735 ILCS 5/2—1201(d) (West 2000).

## III. Admission of Videotape

Dr. Sener and the hospital contend that the trial court erred in allowing the jury to view a videotape depicting a

bacterial infection in the heart that spread to the brain. The appellate court concluded that the trial court's ruling was not an abuse of discretion.

Dr. Sener and the hospital bring this assignment of error to this court. However, their three-paragraph argument does not contain any authority. Supreme Court Rule 341(e)(7) provides that a litigant's brief must contain citations to the relevant authority supporting the argument on appeal. 188 Ill. 2d R. 341(e)(7). "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Rule 341(e)(7)." *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 111-12 (1988); accord *Kelley v. Kelley*, 317 Ill. 104, 107 (1925). Although we could, in light of the violation of Rule 341(e)(7), consider this matter waived, we instead will exercise our discretion in this matter and address the issue on the merits since we can discern the question sought to be resolved. See *People ex rel. Carter v. Touchette*, 5 Ill. 2d 303, 305 (1955); *People v. Jung*, 192 Ill. 2d 1, 12-13 (2000) (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.); *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253, 256 (1993).

After reviewing the record, we hold that the trial court did not abuse its discretion by admitting the videotape as demonstrative evidence. Dr. David Snydman, qualified and board certified in infectious diseases, testified that the video animation would be helpful in explaining to the jury the general development of endocarditis, a condition for which plaintiff is now at risk. He clearly and specifically explained the relevant differences between the type and location of infection depicted in the videotape and the infection that plaintiff may suffer in the future, owing to the presence of the catheter fragment. Further, Dr. Sener and the hospital

had the right and the opportunity to cross-examine Dr. Snydman so as to assure that the videotape could not have misled or confused the jury.

IV. Exclusion of Cumulative Testimony

Dr. Sener and the hospital next contend that the trial court erred in excluding as cumulative the testimony of one of their experts, Dr. John Raaf. The record shows that during the court's consideration of motions *in limine*, the court discussed generally the problem of cumulative testimony and informed counsel for both sides that the court would not entertain cumulative medical testimony and would sustain objections to such testimony.

Dr. Richard Vasquez testified as an expert on behalf of defendants. Dr. Vasquez opined that Dr. Sener had met the medically relevant standard of care.

Dr. Sener and the hospital then called Dr. Raaf as an expert. After listening to the equivalent of approximately 20 record pages of testimony, the trial court called a sidebar to express concern regarding Dr. Raaf's testimony. The court stated that if Dr. Raaf was about to testify regarding the medical standard of care, then that testimony would be cumulative. Defense counsel stated that Dr. Raaf's testimony would go to the medical standard of care. Defense counsel declined to make an offer of proof as to other matters to which Dr. Raaf could testify. The court excused Dr. Raaf and told the jury:

> "THE COURT: Folks, after talking with the lawyers, I have—I have determined that the last witness, Dr. Raaf, his testimony was going to be on similar topics to those we have covered.
>
> So I've decided it would be more efficient on use of your time if we move on to another topic, okay?
>
> THE JURY: Thank you."

The appellate court found no abuse of discretion.

Initially, we note plaintiff's argument, in defense of the judgment, that we are precluded from reviewing this contention because Dr. Sener and the hospital failed to

make an offer of proof. When a trial court excludes evidence, no appealable issue remains unless a formal offer of proof is made. The failure to do so results in a waiver of the issue on appeal. The purpose of an offer of proof is to inform the trial court, opposing counsel, and a reviewing court of the nature and substance of the evidence sought to be introduced. However, an offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced. *People v. Peeples*, 155 Ill. 2d 422, 457-58 (1993); see also *In re A.M.*, 274 Ill. App. 3d 702, 709 (1995); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.7, at 23-24 (7th ed. 1999). In this case, an offer of proof was not required because the trial court understood that Dr. Raaf would testify as to the medical standard of care. See *First National Bank of Mount Prospect v. Village of Mount Prospect*, 197 Ill. App. 3d 855, 864-65 (1990) (offer of proof unnecessary where expert's opinion testimony was obvious).

Turning to the merits, the exclusion of cumulative evidence is within the discretion of the trial court, whose ruling will not be reversed absent a clear abuse of that discretion. *Kozasa v. Guardian Electric Manufacturing Co.*, 99 Ill. App. 3d 669, 678 (1981) (collecting cases). This discretion includes limiting the number of expert witnesses. See *Yassin v. Certified Grocers of Illinois*, 150 Ill. App. 3d 1052, 1061 (1986); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1, at 192 (7th ed. 1999).

Dr. Sener and the hospital note that plaintiff and Davol were allowed to present several expert witnesses to criticize various aspects of Dr. Sener's conduct, while he and the hospital could present only one. They posit: "It is common knowledge that in medical malpractice cases, each side presents two or three expert witnesses to support the conduct or criticize the conduct of the Defen-

dant." They assert that "[t]he abuse of discretion in this case is the uneven treatment of the parties."

We cannot accept this contention. As in the appellate court, Dr. Sener and the hospital do not indicate how the evidence that Dr. Raaf would have presented, *i.e.*, his opinion that Dr. Sener had met the medically relevant standard of care, was not cumulative to the testimony of Dr. Vasquez. Nor have they shown that the expert testimony that plaintiff and Davol presented was in any way cumulative. Further, Dr. Sener and the hospital presented several experts and treating physicians, who testified on various aspects of the case for the defense. We uphold the ruling of the trial court.

V. Damages: Increased Risk of Future Injury

Dr. Sener and the hospital next contend that the trial court erred in instructing the jury that it could award plaintiff damages for "[t]he increased risk of future injuries." Plaintiff's argument to the contrary notwithstanding, we note that this issue was adequately preserved for appellate review.

There was evidence presented at trial establishing the proximate causal connection between the actions of Dr. Sener and the hospital and the catheter fragment becoming embedded in plaintiff's heart. On medical advice, plaintiff chose not to attempt removal of the fragment. All the expert witnesses but one believed that the risks of injury from an attempted removal of the fragment outweighed the risks that would exist if the catheter remained in the heart. The attendant risks of the catheter remaining were infection, perforation of the heart, arrhythmia, embolization, and further migration of the fragment. At the time of trial, plaintiff had not suffered from any of these conditions, although she did suffer from anxiety over the fragment's presence.

The evidence was that it was not reasonably certain that plaintiff would in the future suffer the injuries for

which she was at risk due to the fragment's presence in her heart. Several physicians testified about the risk of infection, with the lowest estimated risk being close to zero and the highest being 20%. The risk of arrhythmia was less than 5%. The risks of perforation and migration were also small. The risk of embolization was low to nonexistent.

The jury instruction that addressed compensation for plaintiff's increased risks stated in relevant part:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damages proved by the evidence to have resulted from the negligence of one or more of the defendants, taking into consideration the nature, extent, and duration of the injury:

*The increased risk of future injuries.*

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries." (Emphasis added.)

This instruction was a modified combination of Illinois Pattern Jury Instructions, Civil, No. 30.01 and No. 30.05 (3d ed. 1995). The modification was the addition of the italicized sentence on the increased risk of future injuries. There is no Illinois pattern jury instruction for that element of damages.

The jury awarded plaintiff $500,000 for her increased risk of future injuries. The appellate court upheld the award, holding that the trial court did not err in instructing the jury that plaintiff could be compensated for the increased risk of future harm.

This court has historically rejected assessing damages for future injuries. This court has explained: "It would be plainly unjust to require a defendant to pay damages for results that may or may not ensue and that are merely problematical. To justify a recovery for future damages the law requires proof of a reasonable certainty that they will be endured in the future." *Amann v.*

*Chicago Consolidated Traction Co.*, 243 Ill. 263, 267 (1909). In 1922, this court reiterated this position in *Stevens v. Illinois Central R.R. Co.*, 306 Ill. 370, 377 (1922).

Based on the principles noted in *Amann* and *Stevens*, some panels of our appellate court have denied recovery for an increased risk of future injury that is not reasonably certain to occur. See, *e.g.*, *Wehmeier v. UNR Industries, Inc.*, 213 Ill. App. 3d 6, 33-34 (1991). However, other panels of our appellate court have allowed compensation for an increased risk of future injury, notwithstanding the improbability of the injury's occurrence. See, *e.g.*, *Jeffers v. Weinger*, 132 Ill. App. 3d 877, 884 (1985) (finding "that whether there is a 1% possibility [of plaintiff losing her foot] or a 99% possibility, each is an element of damage which should be considered by the jury"). The rationale of those decisions allowing recovery is that "the increased risk is itself a present injury which should be as compensable as any other present injury." *Anderson v. Golden*, 279 Ill. App. 3d 398, 400 (1996); accord *Harp v. Illinois Central Gulf R.R. Co.*, 55 Ill. App. 3d 822, 827 (1977). In light of the above, a divergence of authority exists in Illinois whether a plaintiff may recover damages for the increased risk of future injuries.

Cases such as *Stevens* and *Amann* and the decisions of our appellate court which adhere to them represent the majority view:

> "The traditional American rule *** is that recovery of damages based on future consequences may be had only if such consequences are 'reasonably certain.' Recovery of damages for speculative or conjectural future consequences is not permitted. To meet the 'reasonably certain' standard, courts have generally required plaintiffs to prove that it is more likely than not (a greater than 50% chance) that the projected consequence will occur. If such proof is made, the alleged future effect may be treated as certain to happen and the injured party may be awarded full compensation for it; if the proof does not establish a greater than

50% chance, the injured party's award must be limited to damages for harm already manifest." *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 119 (D.C. Cir. 1982). Accord 2 D. Dobbs, Remedies § 8.1(7), at 407 (2d ed. 1993); J. King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353, 1370-72 (1981); Note, *Damages Contingent Upon Chance*, 18 Rutgers L. Rev. 875, 876 (1964) (all-or-nothing approach "is the majority rule in the United States"). As one court has explained: "In evaluating damages in a tort action, a trier is concerned with reasonable probabilities, not with possibilities." *Healy v. White*, 173 Conn. 438, 443, 378 A.2d 540, 544 (1977), *overruled, Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474 (1990). "[A] consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished." *Budden v. Goldstein*, 43 N.J. Super. 340, 347, 128 A.2d 730, 734 (1957).

Not all jurisdictions follow the majority rule. For example, in *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474 (1990), the Supreme Court of Connecticut provided an analysis that revealed the problems inherent with the majority approach. That court criticized the "all-or-nothing" approach as follows:

"In essence, if a plaintiff can prove that there exists a 51 percent chance that his injury is permanent or that future injury will result, he may receive full compensation for that injury as if it were a certainty. If, however, the plaintiff

establishes only a 49 percent chance of such a consequence, he may recover nothing for the risk to which he is presently exposed. Although this all or nothing view has been adopted by a majority of courts faced with the issue, the concept has been severely criticized by numerous commentators. By denying any compensation unless a plaintiff proves that a future consequence is more likely to occur than not, courts have created a system in which a significant number of persons receive compensation for future consequences that never occur and, conversely, a significant number of persons receive no compensation at all for consequences that later ensue from risks not rising to the level of probability. This system is inconsistent with the goal of compensating tort victims fairly for all the consequences of the injuries they have sustained, while avoiding, so far as possible, windfall awards for consequences that never happen." *Petriello*, 215 Conn. at 393-94, 576 A.2d at 482-83.

Accord *DePass v. United States*, 721 F.2d 203, 208 (7th Cir. 1983) (Posner, J., dissenting) ("A tortfeasor should not get off scot-free because instead of killing his victim outright he inflicts an injury that is likely though not certain to shorten the victim's life"); 90 Yale L.J. at 1376-81 (criticizing all-or-nothing approach as arbitrary); 2 G. Boston, Stein on Personal Injury Damages § 9:16, at 9—31 through 9—32 (3d ed. 1997) (same).

We believe that the split of authority in our appellate court compels us to revisit this issue and reexamine our holdings in *Amann* and *Stevens*. Our review of cases from other jurisdictions indicates a trend toward allowing compensation for increased risk of future injury as long as it can be shown to a reasonable degree of certainty that the defendant's wrongdoing created the increased risk. *Anderson*, 279 Ill. App. 3d at 400 (citing cases); see also *United States v. Anderson*, 669 A.2d 73 (Del. 1995); 2 J. Nates, C. Kimball, D. Axelrod & R. Goldstein, Damages in Tort Actions § 13.02 (2001); 2 G. Boston, Stein on Personal Injury Damages § 9:16, at 9—30 (3d ed. 1997) ("Compensation should be given for the fact of increased

susceptibility"). This reasoning shows that "[t]he primary motivation of the courts for permitting damages for such an injury is fairness." 2 J. Nates, C. Kimball, D. Axelrod & R. Goldstein, Damages in Tort Actions § 13.02, at 13—8 (2001). Further, based on the principle of single recovery, "[o]ur legal system provides no opportunity for a second look at a damage award so that it may be revised with the benefit of hindsight." *Petriello*, 215 Conn. at 395, 576 A.2d at 483.

Based on this reasoning, the appellate court in this case relied on the appellate court's decision in *Anderson*. There, the court stated that where a defendant's negligence causes a plaintiff to suffer a present injury, the plaintiff is entitled to compensation for the full extent of the injury. If a defendant's negligence places a plaintiff at greater risk of sustaining future injuries than if the negligence had not occurred, the appellate court saw " 'no legitimate reason why [the plaintiff] should not receive present compensation based upon the likelihood of the risk becoming a reality.' " *Anderson*, 279 Ill. App. 3d at 401, quoting *Petriello*, 215 Conn. at 396, 576 A.2d at 483. The *Anderson* court held that a plaintiff who has competent evidence which shows that a defendant has negligently caused her to bear the burden of an increased risk of future injury may present evidence of the increased risk as an element of present damages.

The *Anderson* court further noted that the treatment of an increased risk of future injury as a present injury does not run afoul of the general rule that possible future damages are not compensable absent evidence that such damages are reasonably certain to occur. The court reasoned that this rule stems from the principle that damages may not be awarded on the basis of speculation or conjecture. An award of damages for an increased risk of future injury is proper only if it can be shown to a reasonable degree of certainty that the risk was proximately

caused by the defendant's negligence. Therefore, there is no element of speculation or conjecture in awarding damages for increased risks. *Anderson,* 279 Ill. App. 3d at 400-01.

Like the court in *Anderson,* we also believe that the Connecticut court's approach to this issue better comports with this state's principle of single recovery. An entire claim arising from a single tort cannot be divided and be the subject of several actions, regardless of whether or not the plaintiff has recovered all that he or she might have recovered. This is true even as to prospective damages. There cannot be successive actions brought for a single tort as damages in the future are suffered, but the one action must embrace prospective as well as accrued damages. *Mason v. Parker,* 295 Ill. App. 3d 1096, 1098 (1998), quoting *Radosta v. Chrysler Corp.,* 110 Ill. App. 3d 1066, 1068-69 (1982); accord 1 D. Dobbs, Remedies § 3.1, at 277-78 (2d ed. 1993) ("The damages remedy is not conditional, and it is not payable periodically as loss accrues unless a statute so provides. So the damages award is traditionally made once, in a lump sum to compensate for all the relevant injuries, past and future"). Indeed, this court long ago so held in the specific context of a medical malpractice action. See *Howell v. Goodrich,* 69 Ill. 556, 559-60 (1873) ("For such a cause of action *** there can not be successive suits brought from time to time, as damages may in the future be suffered, but the recovery is once for all, and may embrace prospective as well as accrued damages").

The single recovery principle requires that all damages, future as well as past, must be presented and considered at the time of trial. "This in turn faces the tribunal with the difficult and uncertain task of prophecy, with no chance for second-guessing where the prophecy turns out to be mistaken, or where the parties have failed to present all items of their claims." 4 F. Harper, F. James, & O. Gray, Torts § 25.2, at 498 (2d ed. 1986).

Also, this court has previously held in a different context:

"There is nothing novel about requiring health care professionals to compensate patients who are negligently injured while in their care. To the extent a plaintiff's chance of recovery or survival is lessened by the malpractice, he or she should be able to present evidence to a jury that the defendant's malpractice, to a reasonable degree of medical certainty, proximately caused the increased risk of harm or lost chance of recovery. We therefore reject the reasoning of cases which hold, as a matter of law, that plaintiffs may not recover for medical malpractice injuries if they are unable to prove that they would have enjoyed a greater than 50% chance of survival or recovery absent the alleged malpractice of the defendant. [Citations.] To hold otherwise would free health care providers from legal responsibility for even the grossest acts of negligence, as long as the patient upon whom the malpractice was performed already suffered an illness or injury that could be quantified by experts as affording that patient less than a 50% chance of recovering his or her health." *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 119 (1997).

The theories of lost chance of recovery and increased risk of future injury have similar theoretical underpinnings. See *Anderson*, 669 A.2d at 75-76; 2 D. Dobbs, Remedies § 8.1(7), at 408 (2d ed. 1993).

We realize that our decision to recognize damages for the increased risk of future injury is at odds with our previous holdings in *Stevens* and *Amann*. However, we note that those cases are over 80 years old, and that scientific advances now enable the medical community to more accurately determine the probability of future injuries than in the past. The risk therefore of undue speculation is lessened. We further note that the split in our appellate court has caused mixed results in cases such as this, where some parties recovered compensation, while others did not. Fairness requires that this court speak to this issue definitively. Having reviewed all of the authorities on this issue, we believe our decision

will provide needed stability in this matter for the bench and the bar.

Accordingly, we hold simply that a plaintiff must be permitted to recover for *all* demonstrated injuries. The burden is on the plaintiff to prove that the defendant's negligence increased the plaintiff's risk of future injuries. A plaintiff can obtain compensation for a future injury that is not reasonably certain to occur, but the compensation would reflect the low probability of occurrence. See *Feist v. Sears, Roebuck & Co.*, 267 Or. 402, 410, 517 P.2d 675, 679 (1973) (" 'Admittedly the probability of [plaintiff] getting epileptic seizures is low and it should be weighed by the jury accordingly' "), quoting *Schwegel v. Goldberg*, 209 Pa. Super. 280, 287-88, 228 A.2d 405, 409 (1967). This "fits comfortably within traditional damage calculation methods." *Anderson*, 669 A.2d at 78, citing *Petriello*, 215 Conn. at 397-98, 576 A.2d at 484; accord 2 G. Boston, Stein on Personal Injury Damages § 9:16, at 9—30 through 9—31 (3d ed. 1997) (stating that the solution is not in denying recovery, but in "letting the jury determine on a common sense basis the amount of damages which will reasonably compensate the plaintiff"). "The defendant's proper remedy lies in objecting to the excessiveness of the verdict in an appropriate case." 2 J. Nates, C. Kimball, D. Axelrod & R. Goldstein, Damages in Tort Actions § 13.02, at 13—9 (2001).

Having determined that this element of damages is compensable, we now consider whether the jury was properly instructed thereon. The record shows that Dr. Sener and the hospital failed to object with specificity to the form of the instruction and to offer their own versions thereof. Accordingly, we could consider this issue waived for appellate review. See 155 Ill. 2d R. 366(b)(2)(i); *Deal v. Byford*, 127 Ill. 2d 192, 203 (1989).

However, the waiver rule is a principle of administrative convenience, an admonition to the parties; it is not a

jurisdictional requirement or any limitation upon the jurisdiction of a reviewing court. In this regard, this court has recognized that a reviewing court may, in furtherance of its responsibility to provide a just result and to maintain a sound and uniform body of precedent, override considerations of waiver that stem from the adversarial nature of our system. *In re C.R.H.*, 163 Ill. 2d 263, 274 (1994); *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967); accord 155 Ill. 2d R. 366(a)(5). In this case, for reasons which we will explain, we deem that this responsibility outweighs the waiver by Dr. Sener and the hospital. See, *e.g., Welch v. Johnson*, 147 Ill. 2d 40, 48 (1992); *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991).

In Illinois, the parties are entitled to have the jury instructed on the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict. The decision to give or deny an instruction is within the trial court's discretion. The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. See *Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill. App. 3d 375, 388 (2000); accord *Korpalski v. Lyman*, 114 Ill. App. 3d 563, 568 (1983).

In this case, there is no pattern jury instruction on the increased risk of future injury as an element of damages. Accordingly, this is a situation where our pattern instructions are inadequate and additional instruction is appropriate. See *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451, 454-55 (1979). Under Supreme Court Rule 239(a) (177 Ill. 2d R. 239(a)), a nonpattern instruction is permissible if it is simple, brief, impartial, and nonargumentative. Where a unique factual situation, or a point of law, is presented, a nonpattern instruc-

tion may be given if it is accurate and will have no improper effect on the jury. *Magna Trust*, 313 Ill. App. 3d at 388.

Applying these principles to this case, we conclude that the instruction which the jury received on this element of damages did not adequately state the law. We earlier quoted the jury's instruction on damages, which included the following description of this element: "The increased risk of future injuries."

This instruction fails to instruct the jury on several important legal requirements, *e.g.*, the increased risk must be based on evidence and not speculation, and, more importantly, the size of the award must reflect the probability of occurrence. For example, as a result of *Petriello*, Connecticut Civil Jury Instruction No. 2—40(c) was promulgated:

> "Damages—Compensation for Increased Risk of Injury
> ***
> The plaintiff claims that he/she has suffered an increased risk of [alleged future complication] as a result of the defendant's negligence. The plaintiff is entitled to recover damages for physical harm resulting from a failure to exercise reasonable care. If the failure to exercise reasonable care increases the risk that such harm will occur in the future, the plaintiff is entitled to compensation for the increased risk. In order to award this element of damages, you must find a breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm. The increased risk must have a basis in the evidence. Your verdict must not be based on speculation. *The plaintiff is entitled to compensation to the extent that the future harm is likely to occur as measured by multiplying the total compensation to which the plaintiff would be entitled if the harm in question were certain to occur by the proven probability that the harm in question will in fact occur*." (Emphasis added.)

In the present case, the instruction given failed to convey the principles of law expressed in the italicized portion of the Connecticut instruction. While not

prescribing its use *verbatim*, we hold that the essence of this instruction fairly and correctly states the law on this element of damages.

Our responsibility to provide a just result requires reversal on this issue. The partial dissent, pointing to the dictionary meaning of "risk," concludes that the jury instruction given in this case "was sufficient to describe the type of assessment the jury was required to make." 199 Ill. 2d at 509 (Harrison, C.J., concurring in part and dissenting in part).

However, it must be remembered that juries are composed of laypersons who are not trained to separate issues and to disregard irrelevant matters. That is the purpose of jury instructions. The function of jury instructions is to convey to the jury the correct principles of law applicable to the submitted evidence and, as a result, jury instructions must state the law fairly and *distinctly* and must not mislead the jury or prejudice a party. See *Ono v. Chicago Park District*, 235 Ill. App. 3d 383, 386 (1992); *Pry v. Alton & Southern Ry. Co.*, 233 Ill. App. 3d 197, 214 (1992); *Fravel v. Morenz*, 151 Ill. App. 3d 42, 45 (1986). In the context of this issue, reliance on a dictionary is inadequate to fulfill this purpose.

Our responsibility to maintain a sound and uniform body of precedent likewise requires reversal on this issue. As we earlier noted, today's decision represents a departure from the previous holdings of this court. There was a split of authority in the appellate court over whether the increased risk of future injury was compensable as an element of damages. Further, those appellate court decisions that allowed recovery did not discuss the form of the instruction. We have now definitively spoken to this issue. A retrial, in which a jury may apply the correct legal principles to the submitted evidence, is appropriate to maintain a sound and uniform body of precedent.

The jury in this case was inadequately instructed on the increased risk of future injury as an element of damages. Accordingly, we reverse plaintiff's damages award for the increased risk of future injury, and remand the cause to the trial court for a new trial solely on that element of damages.

## CONCLUSION

For the foregoing reasons, the judgments of the circuit and appellate courts are affirmed in part and reversed in part, and the cause remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE FITZGERALD took no part in the consideration or decision of this case.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

The appellate court's judgment affirming the judgment of the circuit court should be upheld without qualification. Contrary to my colleagues, I would not remand for a new trial on the element of damages for increased risk of future injuries. The damages instruction tendered by plaintiff was adequate as given. Although my colleagues are quite right that the jury's assessment of increased risk must be based on evidence, not speculation, that is true of every element of damages. Indeed, it is true of every element of plaintiff's cause of action.

Juries are told this at the outset of their deliberations. Illinois Pattern Jury Instructions, Civil, No. 1.01(3) (1995), specifically cautions the jury that its verdict

"must be based on evidence and not upon speculation, guess or conjecture." We do not require this caveat to be repeated in the instructions governing the other aspects of a plaintiff's claim, and there is no reason to require such repetition with respect to a plaintiff's claim for damages based on increased risk of future injuries.

I am also unpersuaded by the majority's contention that the damages instruction tendered in this case failed to adequately apprise the jury that the size of its award for increased risk of future injuries must reflect the probability that such injuries will occur. The instruction was specifically phrased in terms of "risk." By definition, risk includes "the product of the amount that may be lost and the probability of losing it." Webster's Third New International Dictionary 1961 (1986). Accordingly, the charge to the jury here was sufficient to describe the type of assessment the jury was required to make.

Even if the revisions to the instruction proposed by my colleagues would have been helpful to the jury, that is not an adequate basis under the law for disturbing the jury's verdict. In assessing the sufficiency of the jury's instructions, the issue is not whether our court could have phrased the instructions in a better way. It is whether the instructions given, considered as a whole and read as a series, were sufficiently clear so as not to mislead the jury and whether they fairly and correctly stated principles of law which pertain to the case. See *Eaves v. Hyster Co.*, 244 Ill. App. 3d 260, 262 (1993).

If the defendants in this case believed that the wording in the instruction on damages was incorrect, incomplete, or otherwise inadequate, it was their duty to object to that instruction and to offer their own remedial versions. *Deal v. Byford*, 127 Ill. 2d 192, 203 (1989). They did not do so. In the trial court, defendants' objection was that the issue of increased risk of future injuries should not be presented to the jury at all. Defendants did

not take issue with the way that issue was set forth in the instruction tendered by plaintiff, and defense counsel declined an express invitation by the trial judge to propose alternative language. Under these circumstances, any claim of error with respect to the wording of the instruction has been waived. See *Diaz v. Chicago Transit Authority*, 174 Ill. App. 3d 396, 401-02 (1988).

In all other respects, I am in complete accord with the majority's disposition.